Scott C. Borison (CA Bar No. 289456)
**BORISON FIRM, LLC**
1900 S Norfolk St Ste 350
San Mateo CA 94403
T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

Attorneys for Plaintiff and the Proposed Class

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kaaron Warren, individually and on behalf of all others similarly situated, | Case No. 21-4577 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Whole Foods Market California, Inc., | |
| Defendant | Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

1    Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining

2 to plaintiff, which are based on personal knowledge:

3    1.    Whole Foods Market California, Inc. ("defendant"), manufactures, distributes,

4 markets, labels and sells dairy coffee creamer under its 365 Everyday Value brand, purporting to be

5 "Naturally Flavored" by "Vanilla," with a picture of three cured vanilla beans and a vanilla flower

6 ("Product").

 

23    2.    "Vanilla" is written in all capital letters, highlighted on a blue background distinct

24 from the surrounding text.

25    3.    The vanilla beans and vanilla flower are about half the size of the cup of fresh coffee

26 which appears to contain white swirls of added creamer.

27

28

**I.       NATURAL VANILLA FLAVOR**

4.       Natural vanilla flavor starts with the vanilla orchid, grown in tropical climates such as Madagascar.



5.       The vanilla flower produces green vanilla beans.



6.       The beans develop their unique flavor from being cured in the tropical sun.



7.       The flavoring principles of vanilla beans are extracted through alcohol.

**CLASS ACTION COMPLAINT**

Beginning                 Middle                 End

8.      The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



9.      While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor, it only contributes about one-third of its flavor and aroma.

10.     The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

11.     The bulk of natural vanilla's flavor is from more than two hundred odor-active

4

compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

12.     These non-vanillin compounds are essential to what consumers expect from vanilla and are only provided together in the extracts of vanilla beans.

13.     Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

14.     Acetovanillone provides a sweet, honey taste.

15.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

16.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

## II.     CONSUMERS SEEK NATURAL FLAVORS

17.     Demand for natural vanilla has been steadily increasing due to consumer demand for natural ingredients.

18.     In 2015, sales of natural products grew 9.5% to $180 billion.[1]

19.     Consumers value natural products for reasons including the belief they are safer and healthier than products that contain synthetic and chemical ingredients, which are associated with detrimental health effects.[2]

20.     Federal agencies have issued guidance on the term "natural" and its variations, so companies will not use this term to mislead consumers.

21.     The Food and Drug Administration ("FDA") defines "natural" to mean nothing artificial or synthetic has been included in or added to a food that is not expected.

22.     The Federal Trade Commission ("FTC") advises that companies must anticipate how reasonable consumers will understand the word "natural."

23.     If "reasonable consumers could interpret a natural claim as representing that a

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp

[2] Julianna M. Butler and Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling." *Id.*

product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[3]

24.     This guidance applies equally to variations of the word "natural," such as "naturally," an adverb, defined as "happening or existing as part of nature and not made or done by people."[4]

25.     One study concluded that the "vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."[5]

26.     Surveys show that "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial [or synthetic] ingredients" and flavor.[6]

27.     Another recent study showed that, "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."[7]

28.     This is consistent with findings that seventy percent of consumers avoid artificial flavors, because they are linked to negative health, nutrition, and environmental effects.

29.     A natural flavor is defined as made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

30.     An Artificial flavor is made from an artificial source or through a non-natural process. 21 C.F.R. § 101.22(a)(1).

31.     The label emphasizes the Product's "natural" attributes through the statements, "Vanilla," "Naturally Flavored," "Made with milk from cows not treated with rBGH," and picture of natural vanilla beans and a vanilla flower and (the "Natural Representations").

32.     In contrast to the Natural Representations, the Product's primary use as a "coffee creamer" is mentioned once.

33.     Surveys and other market research, including expert testimony, will demonstrate that use of the term "Naturally Flavored" to describe the Product's flavoring is false and misleading.

34.     In the context of dairy coffee creamers which only disclose "Vanilla – Naturally Flavored," reasonable consumers will not expect artificial or synthetic flavor ingredients.

---

[3] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[4] Cambridge Dictionary, Naturally.
[5] *Supra*, n. 2.
[6] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010) and on FTC website, Comment 58.
[7] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).

**CLASS ACTION COMPLAINT**

1      35.      Consumers at the point-of-sale are unable to verify whether a vanilla product is

2   natural flavored – exclusively or predominantly from the vanilla beans on the label.

3

4   **III.    CONSUMERS ARE ACCUSTOMED TO TRUTHFUL LABELING**

5      36.      Consumers are accustomed to truthful labeling which tells them the source of a

6   product's flavor.

7      37.      For instance, a product labeled as "strawberry yogurt" will get all its strawberry

8   flavor from strawberries.

9      38.      Where a yogurt is labeled as "strawberry flavored," it means that though the yogurt

10  may contain *some* real strawberries, it contains flavor – essences, extractives, etc. – from

11  strawberries.

12     39.      Should the yogurt contain pictures of strawberries but the statement, "Artificially

13  Flavored," it means that any strawberry taste is provided by flavors from synthetic sources.

14     40.      These labeling conventions are present across all foods and beverages.

15     41.      California's Sherman Law and the Food and Drug Administration ("FDA") have

16  identical requirements for disclosing whether a product's vanilla taste is from vanilla beans or from

17  non-vanilla, synthetic sources. *See* 21 C.F.R. § 101.22(i).

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

42.     For example, other "vanilla" coffee creamers, with pictures of natural vanilla beans and flowers, truthfully disclose they are "Artificially Flavored."[8] See 21 C.F.R. § 101.22(i)(2).

  

43.     The artificially flavored vanilla coffee creamers cost an average of $2.49 per 16 OZ[9], a substantial amount less than defendant's Product, $3.89 per 16 OZ.

44.     The Organic 365 Vanilla Creamer is fifty-six percent more expensive than competitor products, even though both contain artificial vanilla flavor and little, if any, natural vanilla.[10]

|  | $ | OZ | $/OZ |
|---|---|---|---|
| Artificially Flavored Vanilla Creamers | 2.49 | 16 | 0.155625 |
| Organic 365 Vanilla Creamer | 3.89 | 16 | 0.243125 |

---

[8] "French Vanilla" is another term used to describe "Madagascar Vanilla," because this island was once a French colony.
[9] The 16 oz cost is based on the price of these products which are sold in sizes of 32 oz.
[10] The Organic 365 Vanilla Creamer costs $ 0.0875 more per ounce. This is 56.2 percent more than $ 0.155625.

**CLASS ACTION COMPLAINT**

**IV.    THE REPRESENTATIONS ARE FALSE AND MISLEADING**

45.    Consumers who view the front label will expect that the predominant or exclusive source of the Product's vanilla taste will be the natural flavor of vanilla.

46.    The front label image of three cured vanilla beans and a vanilla flower confirms this.



47.    Should consumers scrutinize the ingredient list, they will not see "vanilla extract" or "vanilla beans" but only see "NATURAL FLAVOR."



**INGREDIENTS:** NONFAT MILK, CREAM, CANE SUGAR, ==NATURAL FLAVOR==.

48.    Despite the promises that the Product's vanilla taste is exclusively or predominantly from the "natural flavor" of vanilla or even natural flavors *other* than vanilla, the Product contains no appreciable or detectable amount of vanilla and is flavored almost exclusively by artificial flavor.

49.    That the "Natural Flavor" consists of little, if any of the natural flavor of vanilla, depicted on the label, is based on several facts.

50.    First, according to Scott Rankin, a professor of dairy foods at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

9

51.   For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

52.   Consumers are not told the "Natural Flavor" *may* contain a *de minimis* or negligible amount of natural vanilla, and that the Product's vanilla taste is mostly from artificial flavor.

53.   Consumers will see the from the ingredients that the Product contains milk, cream and sugar, so will have to reason not to expect an appreciable amount of vanilla.

54.   Should a consumer view the side panel, it would further confirm the presence of high-quality dairy ingredients, through the statements "Grade A" and "Ultra Pasteurized."[11]



55.   While food labeling experts such as Dr. Rankin may know "industry shorthand," it is not known to reasonable consumers, including Plaintiff.

56.   Consumers are not expected or required to scour the ingredient list on the back of the Product to confirm or debunk prominent front label claims.

57.   Second, analytical testing of the Product in 2020 and 2021 confirmed that the

---

[11] "Carrageenan Free" and "Best Consumed Within 7 Days After Opening."

**CLASS ACTION COMPLAINT**

Product's "vanilla" taste is not from natural vanilla flavor or even non-vanilla natural flavors, but artificial flavor.

58.     In isolating key natural vanilla compounds, the amount of vanillin was disproportionately greater than if it was present only from the natural flavor of vanilla.

59.     The vanillin was unaccompanied by expected amounts of key aromatic compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

60.     Third, guaiacol was detected at atypically elevated levels, not explained by relation to any other compounds.

61.     Guaiacol is the source of 85% of artificial vanillin.

62.     The detection of guaiacol is considered a "fingerprint" of artificial vanilla.[12]

63.     Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

64.     Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

65.     Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source, and it is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

66.     The ingredient list is misleading, because Defendant is required to identify this flavoring by its specific name, "vanillin" or "artificial flavor."

67.     The Product contains other artificial flavors, such as piperonal (heliotropine). *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

68.     Piperonal is not found in vanilla and is used to contribute a "powdery" note.

69.     While piperonal can be from a natural source, the piperonal detected in the Product is from an artificial source, because it was detected at levels several times higher than if a natural source was used.

70.     Artificial piperonal is made from benzene, a byproduct of petroleum processing, and

---

[12] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.

**CLASS ACTION COMPLAINT**

1    a highly toxic carcinogen that causes leukemia.

2

3    **V.     THE "NATURALLY FLAVORED" AND "NATURAL FLAVOR" STATEMENTS**

4         **ARE MISLEADING**

5         71.    Even if a reasonable consumer reviewed the ingredient list, they would not know that

6    the "Naturally Flavored" front label statement is not true, because the product contains artificial

7    flavors from synthetic sources.

8         72.    Should Defendant claim that its "Natural Flavor" contains vanilla flavor from a non-

9    synthetic, yet non-vanilla source, the front label would still be misleading because the only natural

10   vanilla flavor – and natural vanillin – is from vanilla beans.

11        73.    In correspondence with vanilla suppliers, the FDA has emphasized that "'natural

12   flavor' must not be used in such a way to imply that it is a 'natural vanilla flavor', because it is not

13   derived from vanilla beans. *See* Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell,

14   February 25, 2016.

15        74.    According to the FDA, where a food's characterizing flavor is vanilla and "the

16   flavoring was not derived from vanilla…[it] must be identified as 'artificially flavored.'" *Id.*

17        75.    By placing the term "Naturally Flavored" directly below "Vanilla," consumers will

18   expect most, or all the Product's flavoring to be from the natural flavor of vanilla.

19        76.    "Naturally Flavored" is false, deceptive, and misleading even if the Product contains

20   vanilla flavor from non-synthetic, non-vanilla sources because the flavoring is not derived from

21   vanilla.

22        77.    Even if consumers expected non-vanilla, non-synthetic flavoring, they would still be

23   misled due to flavor from artificial sources.

24        78.    Although the flavoring used to simulate the Product's characterizing vanilla flavor is

25   (1) not from vanilla beans, (2) from artificial petrochemical sources and (3) made through artificial

26   processes, Defendant pretends otherwise, conflating natural and artificial flavoring and deceiving

27   consumers.

28        79.    Because the Product contains artificial flavor – vanillin and piperonal – that

1  "simulates, resembles or reinforces the characterizing flavor," the front label is required to, but
2  omits, that it is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

3      80.    Defendant knows consumers will pay more for the Product because its
4  representations include pictures of vanilla, "Vanilla," "Naturally Flavored," and omits that it is
5  artificially flavored.

6      81.    The Product lacks an authentic vanilla taste because of the absence of the critical
7  odor-active compounds in vanilla.

8      82.    The added vanillin, from an *artificial* source, gives the Product a "sweet, creamy"
9  taste, which is distinct from the multifaceted taste of the natural flavor of vanilla.

10     83.    The addition of more natural vanilla flavor to the Product in place of artificial flavor
11  would cost approximately $ 0.07 per 16 oz, a *de minimis* increase in cost, especially considered the
12  premium price of the Product compared to similar products.

13

14  **VI.    RELIANCE AND ECONOMIC INJURY**

15     84.    Plaintiff saw and relied on the label, which misleadingly states, "Naturally Flavored,"
16  "Vanilla," and has pictures of vanilla.

17     85.    Plaintiff sought to purchase a product with a materially greater amount of natural
18  flavor from vanilla beans than was present.

19     86.    Plaintiff sought to purchase a product with only flavors from natural, non-synthetic
20  sources.

21     87.    Plaintiff sought to purchase a product with without synthetic and artificial flavor
22  ingredients.

23     88.    Plaintiff expected that most or all the vanilla taste would be from natural vanilla.

24     89.    Plaintiff did not expect the vanilla taste to be provided mostly, or all, by artificial
25  flavoring from artificial sources.

26     90.    Plaintiff would not have purchased the Product if she knew the representations were
27  false and misleading.

28     91.    The Product costs more than similar products without misleading representations and

but for the misleading representations, would have cost less.

92.     Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

93.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.89 per 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## INTRADISTRICT ASSIGNMENT

94.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in San Francisco County, and this action should be assigned to the Oakland or San Francisco Division.

## PARTIES

95.     Plaintiff Kaaron Warren is a resident of San Francisco, San Francisco County, California.

96.     During the relevant statutes of limitations for each cause of action, during 2020 and more recently, between April and May 2021, Plaintiff purchased the Product for personal and household consumption and use, in reliance on the representations.

97.     Plaintiff understood "Naturally Flavored" to mean the Product was flavored exclusively or predominantly from the natural flavor of vanilla, images of which were presented on the label.

98.     Plaintiff expected that if the Product contained non-vanilla flavors, they would be from non-synthetic, natural sources.

99.     Plaintiff understood the "Naturally Flavored" statement to mean the Product did not contain any artificial or synthetic flavoring.

100.    Plaintiff purchased the Product at defendant's stores, including 450 Rhode Island Street San Francisco CA 94107.

**CLASS ACTION COMPLAINT**

101.   Plaintiff tries to consume natural foods that are flavored only or mainly by their characterizing ingredients, or at a minimum, only with natural flavors, and avoids synthetic and artificial flavor ingredients as much as possible.

102.   Plaintiff expected more than a vanilla taste, but natural vanilla from vanilla beans.

103.   Plaintiff would buy the Product again if assured it was flavored mainly by the natural flavor of vanilla instead of synthetic flavoring.

104.   Defendant Whole Foods Market California, Inc., is a California corporation with a principal place of business in Emeryville, Alameda County, California. As a California entity that operates in California, California law applies to any interactions between Defendant and others regardless of the residency of others.

105.   Defendant is the West Coast subsidiary of the Whole Foods grocery chain.

106.   Whole Foods operates over five hundred stores in the United States.

107.   One-fifth of these stores are in California.

108.   Whole Foods is known for its organic and high-quality grocery products.

109.   Whole Foods is self-described as "more than just a grocery store, [because] [they] seek out the finest natural and organic foods available [and] maintain the strictest quality standards."[13]

110.   Whole Foods manufactures or contracts to manufacture, private label products under its brand, "365 Everyday Value."

111.   The quality of products under the 365 Everyday Value is considered equal to, or greater than, similar products sold by national brands.

112.   Whole Foods also sells its products through the internet, via its own website, and via the website of corporate parent, Amazon.com, Inc. ("Amazon").

113.   The Organic 365 Everyday Value Vanilla Dairy Coffee Creamer is available at all of Defendant's stores and from its online platforms.

114.   Defendant's Vanilla Dairy Coffee Creamer is purported to be distributed by Whole

---

[13] Website Text Preview, Google search of whole foods,
https://www.amazon.com/alm/storefront/ref=grocery_wholefoods?almBrandId=VUZHIFdob2xlIEZvb2Rz

**CLASS ACTION COMPLAINT**

Foods Market, which is headquartered in Austin, Texas.



115.    Defendant is the entity responsible for the Product's labeling and approves and authorizes all products bearing the 365 Everyday Value brand.

**JURISDICTION AND VENUE**

116.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)(A).

117.    Plaintiff Kaaron Warren seeks to represent a class of plaintiffs consisting of California and Oregon purchasers of the Product.

118.    Defendant is a California citizen because it is incorporated in, and has its principal place of business, in California.

119.    Members of the class of proposed plaintiffs are citizens of a state different from defendant.

120.    Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs and the class size exceeds 100 persons.

121.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff in this District and her awareness of the representations and omissions identified here.

122.    This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

**CLASS ACTION COMPLAINT**

**CLASS ACTION ALLEGATIONS**

123.    Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

124.    Plaintiff seeks to represent all persons who purchased the Product for personal or household consumption and use since June 7, 2015, residing in California (the "California Class") and in Oregon (the "Oregon Class") (collectively, the "Class")

> All persons residing in California and Oregon who purchased the Product for personal or household consumption and use since June 6, 2015 (the "Class"),

125.    The Class consists of thousands of persons, and joinder is impracticable.

126.    Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

127.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

128.    Plaintiff is an adequate representative because her interests do not conflict with other members.

129.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

130.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

131.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

132.    Plaintiff seeks certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

133.    Plaintiff seeks certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members and Defendant has acted or refused to act on grounds that apply generally to the Class.

134.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(ON BEHALF OF THE CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

135.    Plaintiff incorporates all preceding paragraphs.

136.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

137.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

2.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

3.    21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

4.    21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

5.    21 C.F.R. § 102.5, which prohibits misleading common or usual names.

138.    Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL").

139.    Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

1. Section 110100 (adopting all FDA regulations as state regulations);

2. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

140. Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

141. Defendant leveraged its deception to induce Plaintiff and class members to purchase a product that was of lesser value and quality than advertised.

142. Defendant's deceptive advertising caused Plaintiff and class members to suffer injury-in-fact and to lose money or property.

143. Defendant's actions denied Plaintiff and class members the benefit of the bargain

1  when they decided to purchase the Product instead of other products that are less expensive and

2  contain virtually the same or immaterially different amounts of natural vanilla flavor.

3      144.    Had Plaintiff and class members been aware of Defendant's false and misleading

4  advertising, they would not have purchased the Product at all, or would have paid less than they did.

5      145.    In accordance with California Business & Professions Code section 17203, Plaintiff

6  seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

7  and/or fraudulent acts and practices and to commence a corrective advertising campaign.

8      146.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the

9  sale of the Product that was unjustly acquired through such acts.

10

11                          **SECOND CLAIM**
                      **(ON BEHALF OF THE CLASS)**
12   **(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
                 **Unfair and Fraudulent Conduct Prong of the UCL)**
13

14     147.    Plaintiff incorporates all preceding paragraphs.

15     148.    California Business & Professions Code section 17200 prohibits any "unlawful,

16  unfair or fraudulent business act or practice."

17     149.    The false and misleading representations of the Product constitutes "unfair" business

18  acts and practices because it is immoral, unscrupulous, and offends public policy.

19     150.    The gravity of the conduct outweighs any conceivable benefit.

20     151.    The representations and omissions constitute "fraudulent" business acts and practices

21  because they are false and misleading to Plaintiff and class members.

22     152.    Defendant's representations and omissions are likely to deceive Plaintiff and Class

23  Members about the absolute and relative amounts of natural vanilla flavor and natural flavors.

24     153.    Defendant knew or reasonably should have known that its statements and omissions

25  concerning the Product were likely to deceive consumers.

26

27

28

**CLASS ACTION COMPLAINT**

154.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

155.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

156.    Plaintiff incorporates all preceding paragraphs.

157.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

158.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of vanilla and natural ingredients in the Product.

159.    In reliance on these false and misleading advertising claims, Plaintiff and class members purchased and consumed the Product without the knowledge it contained a *de minimis* amount of natural vanilla flavor ingredients and a substantial amount of non-vanilla ingredients, including from synthetic sources.

160.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

161.    As a result, Plaintiff and class members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**CLASS ACTION COMPLAINT**

**FOURTH CLAIM**
**(ON BEHALF OF THE CLASS)**
**Unjust Enrichment**

162.    Plaintiff incorporates all preceding paragraphs.

163.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

**JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq.;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq*.;

E.    For punitive damages;

F.    For interest at the legal rate on the foregoing sums;

G.    For attorneys' fees;

H.    For costs of suit incurred; and

I.    For such further relief as this Court may deem just and proper.

Dated:   June 15, 2021

Respectfully submitted,

/s/ Scott C. Borison
Scott C. Borison (CA Bar No. 289456)
BORISON FIRM, LLC
1900 S Norfolk St Ste 350
San Mateo CA 94403

**CLASS ACTION COMPLAINT**

T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
T: (516) 268-7080
F: (516) 234-7800
spencer@spencersheehan.com

*Pro Hac Vice Application Forthcoming

**CLASS ACTION COMPLAINT**