1  BRIAN R. BLACKMAN (SBN 196996)
   bblackman@blaxterlaw.com
2  J.T. WELLS BLAXTER (SBN 190222)
   wblaxter@blaxterlaw.com
3  DAVID P. ADAMS (SBN 312003)
   dadams@blaxterlaw.com
4  BLAXTER | BLACKMAN LLP
   601 California Street, Suite 1505
5  San Francisco, California 94108
   Telephone: (415) 500-7700
6
7  Attorneys for defendant WHOLE FOODS
   MARKET CALIFORNIA, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11 KAARON WARREN, individually, and on        Case No. 3:21-cv-04577-EMC
   behalf of those similarly situated,
12                                            **DEFENDANT'S NOTICE OF MOTION
                 Plaintiff,                   AND MOTION TO DISMISS
13                                            PLAINTIFF'S COMPLAINT;
           v.                                 MEMORANDUM OF POINTS AND
14                                            AUTHORITIES**
   WHOLE FOODS MARKET CALIFORNIA,
15 INC.                                       Date:   October 28, 2021
                                              Time:  1:30 P.M.
16               Defendant.                   Crtrm: 5, 17th Floor

17                                            The Honorable Edward M. Chen

18

19

20

21

22

23

24

25

26

27

28

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2    TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on October 28, 2021 at 1:30 P.M., or as soon thereafter as

4    counsel may be heard in Courtroom 5 of the above-entitled Court, located in the United States

5    District Court, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Whole Foods

6    Market California, Inc. ("WFM California"), will and hereby does move to dismiss plaintiff Kaaron

7    Warren's ("Plaintiff") Complaint pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6).

8    WFM California moves for dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P.

9    12(b)(1) on the grounds that Plaintiff lacks standing to assert claims under Oregon Law and

10   therefore her class claims should be limited to California residents.  Because Plaintiff cannot

11   represent Oregon residents, her claims lacks minimal diversity and are subject to the home-state

12   exception to the exercise of original jurisdiction under the Class Action Fairness Act of 2005

13   ("CAFA"), 28 USC § 1332(d)(2), (4).  WFM California also moves to dismiss Plaintiff's claims

14   under Fed. R. Civ. P. 12(b)(6) on the grounds that the Complaint does not allege a plausible theory

15   of deception and Plaintiff has an adequate remedy at law.

16   This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

17   Points and Authorities, the accompanying Declarations of Timothy Horn and Brian Blackman, all

18   other pleadings, papers, records and documentary materials on file in this action, and such further

19   evidence and argument as the Court may allow at the hearing on this Motion.

20   Dated:  September 20, 2021                          BLAXTER | BLACKMAN LLP

21

22                                                   By   _____
                                                              /s/*Brian R. Blackman*

23                                                         BRIAN R. BLACKMAN
                                                           J.T. WELL BLAXTER

24                                                         DAVID P. ADAMS
                                                           Attorneys for Defendant

25                                                   WHOLE FOODS MARKET CALIFORNIA, INC.

26

27

28

-1-                                      Case No. 3:21-cv-04577-EMC
                                         DEF.'S MTN. TO DISMISS CMPLT.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      STATEMENT OF ISSUES TO BE DECIDED.............................................................1

II.     INTRODUCTION........................................................................................................1

III.    FACTUAL ALLEGATIONS........................................................................................4

IV.    LEGAL STANDARDS ................................................................................................5

V.     LEGAL ARGUMENT .................................................................................................6

     A.     Plaintiff Lacks Standing to Assert Claims on Behalf of Absent Class
            Members Residing Outside of California..........................................................6

            1.     Each Putative Class Member's Claims Are Governed by the Laws
                    of Their Home State ..............................................................................6

            2.     Plaintiff Lacks Article III Standing to Bring Claims on Behalf of
                    Consumers Who Purchaser 365 Coffee Creamer in Oregon.......................9

     B.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims ..................11

            1.     Plaintiff's Claims Lack Minimal Diversity ..................................................11

            2.     The Home-State Exception to CAFA Jurisdiction Applies to
                    Plaintiff's Claims.................................................................................12

     C.     Plaintiff Failed to Allege a Plausible Claim of Unlawful, Unfair or
            Deceptive Business Practices Under the UCL or FAL ...........................................13

            1.     The Use of the Term "Vanilla" and Associated Images Are
                    Not Misleading to Reasonable Consumers. ...............................................14

            2.     Plaintiff Has Not Plausibly Alleged That 365 Coffee Creamer's Label
                    Does Not Comply with Federal Regulations or That It Contains
                    Artificial Flavors .................................................................................18

     D.     Because She Has an Adequate Remedy at Law, Plaintiff Cannot Pursue Her
            Equitable Claim for Restitution under the UCL and FAL .....................................22

VI.    CONCLUSION .........................................................................................................24

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Abrego Abrego v. The Dow Chem. Co.*

4
    443 F.3d 676 (9th Cir. 2006)...................................................................................11

5

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937 L.Ed.2d 868 (2009) ........................................5, 6

6

*Barreto v. Westbrae Natural, Inc.*

7
    2021 WL 76331 (S.D.N.Y. Jan. 7, 2021)................................................................20

8

*Becerra v. Dr. Pepper/Seven Up, Inc.*
    945 F.3d 1225 (9th Cir. 2019) ...............................................................................14

9

*Bell Atl. Corp. v. Twombly*

10
    550 U.S. 544 (2007) .......................................................................................5, 6, 14

11

*Bender v. Williamsport Area Sch. Dist.*
    475 U.S. 534 (1986) ..................................................................................................5

12

*Brown v. Starbucks Corp.*

13
    2019 WL 996399 (S.D. Cal. Mar. 1, 2019)............................................................14

14

*Budhani v. Monster Energy Co.*
    2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) .......................................................16

15

*Carpenter v. PetSmart, Inc.*

16
    441 F. Supp. 3d 1028 (S.D. Cal. 2020) ........................................................6, 9, 10

17

*Castaneda v. FILA USA, Inc.*
    2011 WL 7719013 (S.D. Cal. Aug. 10, 2011) ........................................................8

18

*Chandler v. State Farm Mut. Auto Ins. Co.*

19
    598 F.3d 1115 (9th Cir. 2010)..................................................................................5

20

*Clark v. Westbrae Natural, Inc.*
    2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ..................................................3, 20

21

*Clark v. Westbrae Natural, Inc.*

22
    2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) .............................................15, 22

23

*Corcoran v. CVS Health Corp.*
    2016 WL 4080124 (N.D. Cal. July 29, 2016) .......................................................11

24

*Cosgrove v. Blue Diamond Growers*

25
    2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .......................................3, 15, 16, 20

26

*Cortez v. McClatchy Newspapers, Inc.*
    2015 WL 3181200 (E.D. Cal. Jun. 7, 2016)...................................................12, 13

27

*DaimlerChrysler Corp. v. Cuno*

28
    547 U.S. 332 (2006) ..................................................................................................9

*Dashnau v. Unilever Manufacturing (US), Inc.*
   2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021) ...................................................16

*Diva Limousine, Ltd. v, Uber Technologies, Inc.*
   392 F. Supp. 3d 1074 (N.D. Cal. 2019) ..........................................................11

*Ebner v. Fresh, Inc.*
   838 F.3d 958 (9th Cir. 2016) .........................................................................14

*Fahey v. Whole Foods Market, Inc.*
   2021 WL 2816919 (N.D. Cal. Jun. 30, 2021) ..............................................3, 15

*Fenerjian v. Nongshim Co.*
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................................10

*Flores v. Chevron Corp.*
   2011 WL 2160420 (S.D. Cal. May 31, 2011) ..................................................13

*Garcia v. Sony Computer Entmt. Am.*
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..........................................................14

*Gibson v. Jaguar Land Rover N. Am., LLC*
   2020 WL 5492990 (C.D. Cal. Sep. 9, 2020) ...................................................24

*Hairston v. S. Beach Beverage Co.*
   2012 WL 1893818 (C.D. Cal. May 18, 2012) .................................................15

*Harris v. CVS Pharmacy, Inc.*
   2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ....................................................9

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................9

*In re Ditropan XL Antitrust Litig.*
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................9, 11

*In re Flash Memory Antitrust Litig.*
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................................9, 11

*In re MacBook Keyboard Litig.*
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................................24

*In re Packaged Seafood Prods. Antitrust Litig.*
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...........................................................10

*Johnson v. Nissan N. Am., Inc.*
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ...........................................................10

*Jones v. Micron Tech. Inc.*
   400 F. Supp. 3d 897 (N.D. Cal. 2019) .............................................................10

*Krommenhock v. Post Foods, LLC*
   2020 WL 6074107 (N.D. Cal. Sep. 29, 2020) ..................................................24

*Mazza v. American Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012)..............................................................7, 8, 9

*Nacarino v. Chobani, LLC*
    2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ......................3,15, 16, 17, 23

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ........................................................................24

*Parks Sch. of Bus, Inc. v. Symington*
    51 F.3d 1480 (9th Cir 1995) .................................................................5

*Peviani v. Hostess Brands, Inc.*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...............................................18

*Pichardo v. Only What You Need, Inc.*
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ....................................3, 15

*Quesada v. Herb Thyme Farms, Inc.*
    2011 WL 1195952 (C.D. Cal. Mar. 28, 2011) ......................................13

*Rodriguez v. Instagram, LLC*
    2013 WL 3732883 (N.D. Cal. Jul. 15, 2013) ...................................12, 13

*Rotenberg v. Brain Research Labs, LLC*
    2009 WL 2984722 (N.D. Cal. Sep. 15, 2009).......................................13

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) ...............................................................5

*Salazar v. Honest Tea Inc.*
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ..................................................18

*Scott v. Breeland*
    792 F.2d 925 (9th Cir. 1986)...........................................................5, 11

*Sonner v. Premier Nutrition Corp.*
    971 F.3d 834 (9th Cir. 2020) .........................................1, 22, 23, 24

*Steele v. Wegmans Food Markets, Inc.*
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) .........................3, 16, 17, 20, 21

*Trazo v. Nestle USA, Inc.*
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)........................................18

*Twohig v. Shop-Rite Supermarkets, Inc.*
    2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ........................................21

*Walker v. Apple, Inc.*
    2015 WL 12699871 (S.D. Cal. Sep. 17, 2015) .....................................13

*Wang ex rel. United States v. FMC Corp.*
    975 F.2d 1412 (9th Cir. 1992).................................................................5

*Williams v. Gerber Products, Co.*
    552 F.3d 934 (9th Cir. 2008) .................................................................................................14

*Wilson v. Frito-Lay N. Am.*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................................6, 7

*Zaback v. Kellogg Sales Co.*
    2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) .............................................................23, 24

### CALIFORNIA CASES

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009).............................................................................................23

*Kasky v. Nike, Inc.*
    27 Cal. 4th 939 (2002).......................................................................................................18

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ............................................................................................14

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*
    9 Cal. 5th 279 (2020).........................................................................................................22

*Sullivan v. Oracle Corp.*
    51 Cal. 4th 1191 (2011).......................................................................................................6

### STATUTES

21 C.F.R. § 101.22 .........................................................................................17, 18, 19, 20

21 U.S.C. § 321(f) ......................................................................................................................18

21 U.S.C. § 343-1 (a)(3) ...........................................................................................................18

28 U.S.C. § 1332 .......................................................................................................................11

28 U.S.C. § 1332(d) ..................................................................................................................11

28 U.S.C. § 1332(d)(2)(A) ........................................................................................................12

28 U.S.C. § 1332(d)(4)(B) ........................................................................................................12

California Business & Professions Code §§ 17200, *et seq.* ........................................................4

California Business & Professions Code §§ 17500, *et seq.* ........................................................4

California Civil Code § 1750, *et seq.* .......................................................................................23

California Civil Code § 1780(a)(1) ...........................................................................................24

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff has standing to represent a class of Oregon consumers?

2.      Whether, absent Oregon class members, this Court has subject matter jurisdiction over plaintiff Kaaron Warren's ("Plaintiff") claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)?

3.      Whether Plaintiff plausibly alleged that reasonable consumers are deceived by 365 Coffee Creamer's label?

4.      Whether Plaintiff failed to plausibly and adequately allege that the product does not comply with federal and state food laws and regulations?

5.      Should the Court dismiss all of Plaintiff's equitable claims under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020), because she has not alleged that she lacks an adequate remedy at law?

**II.      INTRODUCTION**

This lawsuit challenges the labeling of 365 Everyday Value Vanilla Coffee Creamer ("365 Coffee Creamer").  Defendant Whole Foods Market California, Inc. ("WFM California") sells 365 Coffee Creamer at its retail grocery stores in California.  It does not own or operate any Whole Foods Market stores in Oregon and, therefore, has not sold the creamer in Oregon.  The product's front label includes the word "vanilla" to identify how the product will taste and to differentiate it from other versions of 365 Coffee Creamer, including hazelnut.

Plaintiff Kaaron Warren ("Plaintiff") alleges that the use of "vanilla" on the product's front label is unlawful and misleading because it leads consumers to believe that the product's vanilla flavor comes ***exclusively and/or predominately*** from vanilla beans.  Plaintiff makes these allegations even though she admits 365 Coffee Creamer contains at least some natural flavoring extracted from vanilla beans (*i.e.*, vanilla extract), and that its packaging does not affirmatively represent that the product is "made with" or "contains" a specific amount of vanilla extract or that

1  its flavoring is "exclusively," "purely," or "100%" derived from vanilla beans.  Plaintiff is not

2  entitled to relief from this Court and her Complaint should be dismissed for the following reasons.

3        *First,* the Complaint only alleges facts supporting purchases of 365 Coffee Creamer in

4  California and subject to California law.  Plaintiff, therefore, does not have standing to assert

5  claims under other states' laws that would govern purchases in those states and, therefore, does not

6  have standing to assert her claims on behalf of an Oregon class of consumers.  Further, absent an

7  Oregon subclass, the Complaint does not allege the facts needed to establish this Court's subject

8  matter jurisdiction.  Plaintiff alleges diversity jurisdiction under the Class Action Fairness Act of

9  2005, which only requires minimal diversity, but absent her proposed Oregon subclass she has not

10 alleged any facts establishing minimal diversity.  Even if she had, however, because her proposed

11 class should be limited to a class of California purchasers, the home-state controversy exception to

12 CAFA jurisdiction requires the Court decline to exercise subject matter jurisdiction over this local

13 action.

14       *Second*, Plaintiff's claims are implausible.  They lack the factual support necessary to push

15 them across the line from the "possible" to the "plausible."  Indeed, common sense and common

16 knowledge compel the conclusion that *reasonable* consumers understand the label statement

17 "vanilla" to refer to how the product will taste – not what specific ingredient imparts that flavor.

18 There is nothing in the word "vanilla," nor in the vanilla plant and bean images on the label, that

19 would suggest to reasonable consumers that the product's flavor comes exclusively and/or

20 predominately from the vanilla bean.  In fact, as conceded the Complaint, 365 Coffee Creamer

21 contains at least some vanilla extract, which is included within the "natural flavors" statement in

22 the product's ingredient list.

23       *Third*, Plaintiff has not alleged any facts that tend to establish the 365 Coffee Creamer's

24 label does not comply with federal regulations or that the product contains artificial, as opposed to

25 natural, flavoring ingredients.  The testing allegations, which Plaintiff relies on to establish the

26 alleged use of artificial vanillin and piperonal, are flawed, unreliable and fail to remedy Plaintiff's

27 otherwise implausible claim of deception.  In fact, numerous courts faced with these same

28

1   "vanilla" claims have rejected similar analytic testing results as establishing a factual basis for

2   inferring the presence of artificial flavoring ingredient.

3          *Finally*, Plaintiff's equitable claims should be dismissed because she has not alleged that

4   she lacks an adequate remedy at law.  Plaintiff served a 30-day notice letter on WFM California,

5   articulating her intent to bring a claim for damages under California's Consumer Legal Remedies

6   Act based on these same allegations.  Thus, Plaintiff has an adequate remedy at law and her

7   equitable claims should be dismissed.

8          This action is largely indistinguishable from an ever-growing number of consumer

9   deception lawsuits filed in California and New York targeting vanilla-flavored products based on

10  the same general allegations and theories of deception.[1]  District courts in both states have

11  dismissed many of these lawsuits on the basis that the plaintiffs had not alleged plausible claims of

12  consumer deception.  *See Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL

13  7043879, at *1 (N.D. Cal. Dec. 1, 2020); *Fahey v. Whole Foods Market, Inc.*, Case No. 20-cv-

14  06737-JST, 2021 WL 2816919, at *2 (N.D. Cal. Jun. 30. 2021); *Nacarino v. Chobani, LLC*, No.

15  20-cv-07437-EMC, 2021 WL 3487117 (N.D. Aug. 9, 2021); *Steele v. Wegmans Food Markets,*

16  *Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-

17  VEC, 2020 WL 6323775, at **3-5 (S.D.N.Y. Oct. 27, 2020); and *Cosgrove v. Blue Diamond*

18  *Growers*, No. 19-cv-8993-VM, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020).  The legal reasoning

19  and conclusions of these cases apply with equal force to the present matter.  All of Plaintiff's

20  claims fail as a matter of law and should be dismissed.

21

22  [1] Plaintiff's counsel filed several of these actions against Whole Foods Market Group, Inc. and
    WFM California relating to several different 365 products labeled as "vanilla," including *Burke v.*

23  *Whole Foods Market Group, Inc.*, Southern District of New York, Case No. 19-cv-05913-CBA;
    *Pinkston v. Whole Foods Market Group, Inc.*, Southern District of New York, Case No. 19-cv-

24  09362-LJL; *Hiland v. Whole Foods Market Group, Inc.*, Southern District of New York, Case No.
    20-cv-01680-PMH; *Fisher v. Whole Foods Market Group, Inc.*, Southern District of New York,

25  Case No. 20-cv-05339-GHW; and *Fahey v. Whole Foods Market California, Inc.*, Northern
    District of California, Case No. 20-cv-06737-JST.  The *Burke*, *Pinkston*, and *Fisher* actions were

26  voluntarily dismissed while defendant's motions to dismiss were pending.  Judge Jon S. Tigar
    dismissed the *Fahey* action in response to WFM California's motion to dismiss.  *See Fahey v.*

27  *Whole Foods Market, Inc.*, 2021 WL 2816919 (N.D. Cal. Jun. 30. 2021).

28

### III.    FACTUAL ALLEGATIONS

WFM California owns and operates the Whole Foods Market stores in the Northern California Region.  *See* Declaration of Timothy Horn ("Horn Decl."), ¶2.  This region generally covers Northern California.  *Id.*  WFM California does not own or operate any of the Whole Foods Market stores located in Oregon.  *Id.*  The Oregon stores are owned and operated by Whole Foods Market Pacific Northwest, Inc.  ("WFM PN").  *Id.*, ¶3.

WFM California sells a variety of private label food products at its stores under the "365 Everyday Value" brand name, including coffee creamer.  ECF No. 1 [Complaint], ¶1.  365 Coffee Creamer is sold in 16 oz bottles and comes in two flavors, vanilla and hazelnut.  *Id.*

Plaintiff alleges that she purchased 365 Coffee Creamer from her Whole Foods Market store in San Francisco, California in 2020 and more recently in April and May 2021.  ECF No. 1, ¶¶96, 100.  She further alleges that the 365 Coffee Creamer's front label included the statements "Vanilla" and "Naturally Flavored" along with images of a vanilla flower and vanilla beans.  *Id.*, ¶1.  The creamer's ingredient list identifies "Natural Flavors" as flavoring ingredients.  *Id.*, ¶47.

Plaintiff contends the front label statement "Vanilla" is false and misleading because it leads consumers to believe that 365 Coffee Creamer's vanilla taste comes "exclusively and/or predominately" from vanilla beans.  *Id.*, ¶¶35, 45, 48 & 84.  Plaintiff also claims the front label images of the vanilla flower and bean reinforce this alleged consumer understanding.  *Id.*, ¶¶45-46.  Plaintiff separately contends the "Naturally Flavored" and "Natural Flavors" label statements are false or misleading because the coffee creamer contains artificial or synthetic flavoring ingredients.  *Id.*, ¶¶48, 71-72, 76-78.

Based on these allegations, Plaintiff asserts claims of unlawful and deceptive business practices and advertising in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL").  ECF No. 1, ¶¶135-161.  Plaintiff brings her claims on behalf of herself and a class of "[a]ll persons residing in California and Oregon who purchased the Product for personal or household consumption and use since June 6, 2015."  *Id.*, ¶124.  Plaintiff demands restitution,

1   punitive damages, and injunctive relief.  *Id.* at p. 22:14-19.  Plaintiff also served a 30-day notice

2   letter on WFM California, articulating her intent to bring a claim for damages under California's

3   Consumer Legal Remedies Act based on these same allegations.  *See* Ex. 1 to Declaration of Brian

4   Blackman ("Blackman Decl.").

5                          **IV.    LEGAL STANDARDS**

6          WFM California moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil

7   Procedure 12(b)(1) and 12(b)(6).

8          **Rule 12(b)(1):**  Federal courts are courts of limited jurisdiction and, therefore, only

9   possess power authorized by Article III of the United States Constitution and statutes enacted by

10  Congress.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  Federal courts

11  cannot consider claims for which they lack subject matter jurisdiction.  *See Wang ex rel. United*

12  *States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).  A party may challenge subject matter

13  jurisdiction, at the pleading stage, by motion to dismiss.  Fed. R. Civ. P. 12(b)(1).  Further,

14  because standing relates to the Court's subject matter jurisdiction, it is properly raised by a Rule

15  12(b)(1) motion to dismiss.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th

16  Cir. 2010).  The party invoking the Court's jurisdiction (in this case Plaintiff) has the burden of

17  establishing it exists.  *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  "A Rule 12(b)(1)

18  jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the

19  allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

20  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

21         **Rule 12(b)(6):**  A motion to dismiss a complaint under Rule 12(b)(6) tests the legal

22  sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus, Inc. v. Symington*, 51

23  F.3d 1480, 1484 (9th Cir 1995).  "To survive a motion to dismiss, a complaint must contain

24  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl.*

26  *Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The Supreme

27  Court has emphasized, as relevant here, that "labels and conclusions, and a formulaic recitation of

28

-5-

1   the elements of a cause of action will not [survive a motion to dismiss]," and "courts are not bound

2   to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 50 U.S. at 555

3   (internal quotation marks and citations omitted).  After accepting the well-pleaded allegations, a

4   court then determines whether a complaint alleges a "plausible" claim for relief.  *Iqbal*, 556 U.S.

5   at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

6   stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id.*, quoting

7   *Twombly*, 550 U.S. at 557.

## V.     ARGUMENT

8

9   **A.      Plaintiff Lacks Standing to Assert Claims on Behalf of Absent Class Members**

10            **Residing Outside of California.**

11          Plaintiff seeks to represent a class of "[a]ll persons residing in California or Oregon who

12   purchased [365 Coffee Creamer] for personal or household consumption and use since June 6,

13   2015."  ECF No. 1, ¶¶124.  The Court, however, should dismiss any claims brought on behalf of

14   class members who purchased 365 Coffee Creamer outside of California for lack of standing.

15   *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1040-1041 (S.D. Cal. 2020) ("Plaintiffs

16   must show they have standing for each claim they raise, and Plaintiffs do not have standing to

17   bring claims under the laws of states where they have alleged no injury, residence, or other

18   pertinent connection.")

19          **1.      Each Putative Class Member's Claims Are Governed by the Laws of Their**

20                    **Home State.**

21          California law presumes the legislature did not intend a statute to govern conduct

22   occurring outside the state unless such intention was clearly expressed, or can be reasonably

23   inferred, from the statute.  *See Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011).

24   Numerous courts have held that neither the language nor the legislative history of California's

25   UCL or FAL provide a reasonable inference the legislature intended these statutes to operate

26   extraterritorially and, therefore, "the presumption against extraterritoriality applies to the UCL in

27   full force."  *Id.*; *see also Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal.

28

1  2013) (dismissing UCL and FAL claims on behalf of putative nationwide class relating to

2  activities occurring in other states).

3       In the present action, Plaintiff brings both statutory and common law claims for consumer

4  deception under the UCL and FAL, and unjust enrichment.  *See* ECF No. 1, ¶¶135-163.  She

5  brings these claims on behalf of herself and her alleged class of California and Oregon

6  purchasers.  *Id.*  She seeks to apply California law to her entire putative class irrespective of

7  where each class member resides, purchased the product, or was allegedly injured.  A dual state

8  class, however, is inappropriate because California laws differ from the law of other states, and

9  because each state has an interest in regulating commerce within its borders.  Thus, the statutory

10  and common law claims of Plaintiff's alleged dual state class should be governed by the laws of

11  the states where they purchased their 365 Coffee Creamer.

12       In *Mazza v. American Honda Motor Co.*, the Ninth Circuit reviewed the application of

13  California consumer protection laws, specifically the UCL, FAL and Consumers Legal Remedies

14  Act ("CLRA"), to a nationwide class.  The Ninth Circuit *vacated* the class certification order

15  because the district court "erroneously concluded that California law could be applied to the

16  entire nationwide class, and because it erroneously concluded that all consumers who purchased

17  or leased the Acura RL can be presumed to have relied on defendant's advertisements, which

18  were misleading and omitted material information."  *Mazza v. American Honda Motor Co.*, 666

19  F.3d 581, 594 (9th Cir. 2012).  The Ninth Circuit explained:

20           The district court did not adequately recognize that each foreign
21           state has an interest in applying its law to transactions within its
             borders and that, if California law were applied to the entire class,
22           foreign states would be impaired in their ability to calibrate
             liability to foster commerce.  That this concept was missed or
23           given inadequate weight was error.  The district court's reasoning
             elevated all states' interests in consumer protection to a
24           subordinate level, while ignoring or giving too little attention to
             each state's interest in promoting business.  This presents a mode
25           of analysis that the Class Action Fairness Act was aimed at
             stopping.  See Findings, Class Action Fairness Act § 2(a)(4), Pub.
26           L. No. 109-2, 119 Stat. 4, 5 (2005) (categorizing as an "abuse[]" of
             the class action system the practice of state courts "making
27           judgments that impose their view of the law on other States and
             bind the rights of the residents of those States.").

28

1   *Mazza,* 666 F.3d at 593-94; *see also Castaneda v. FILA USA, Inc.*, No. 11-cv-1033, 2011 WL

2   7719013, at *2 (S.D. Cal. Aug. 10, 2011) (allegations of misconduct based on purchases outside

3   of California made by non-California residents "cannot be actionable under California's Unfair

4   Competition Law").

5       In reaching its conclusion, the Ninth Circuit performed California's choice-of-law

6   analysis and determined the following:  (1) there are material differences between California

7   consumer protection laws and the laws of other states, including requirements of scienter,

8   reliance, and available remedies; (2) foreign jurisdictions have a significant interest in regulating

9   interactions between their citizens and corporations doing business within their state, insofar as

10  consumer protection laws affect a state's ability to attract industry; and (3) applying California

11  law to those jurisdictions would significantly impair their "ability to calibrate liability to foster

12  commerce," while "California interest in applying its law to residents of foreign states is

13  attenuated."  *Mazza,* 666 F.3d at 591-94.  Under this analysis, the court held that "each class

14  member's consumer protective claim should be governed by the consumer protection laws of the

15  jurisdiction in which the transaction took place."  *Id.* at 594.  This reasoning applies with equal

16  force to the present matter.

17      Plaintiff's claims involve application of the same consumer protection laws as *Mazza*

18  (UCL and FAL).  As such, the material differences that dissuaded the Ninth Circuit from

19  applying California law to the claims of putative class members from other states are similarly

20  present here.  Plaintiff has not alleged any facts from which the Court could conclude the

21  purchasing decisions of out-of-state purchasers emanated from California.  Nothing in the

22  Complaint alleges that any out-of-state purchases were directed from California or had anything

23  to do with California.  Thus, while non-California citizens who made purchases in California

24  could assert the same claims based on California law that Plaintiff asserts, there is no plausible

25  way for a non-California citizen who purchased 365 Coffee Creamer outside of California to

26  bring these claims.  Further, WFM California does not operate any stores in Oregon and,

27  therefore, is not responsible for sales of 365 Coffee Creamer in Oregon.  *See* Horn Decl., ¶¶2-3.

28

1    As such, Plaintiff's UCL and FAL claims on behalf of Oregon purchasers should be dismissed.

2          The same is true of the alleged putative class claims for unjust enrichment.  California's

3    choice-of-law rules direct this Court to apply the substantive law of "the state where the last event

4    necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593-594.  For each putative

5    class member, this place is where he or she received the alleged misrepresentation related to 365

6    Coffee Creamer, *i.e.*, the state where they viewed the product label and purchased the creamer.

7    *Id*. (choice-of-law was where "communication of the advertisements to the claimants" occurred).

8    Thus, the substantive laws of Oregon apply to the claims of Oregon purchasers.  Further, as

9    detailed below, Plaintiff lacks standing to assert claims under the laws of Oregon.

10       **2.**      **Plaintiff Lacks Article III Standing to Bring Claims on Behalf of Consumers**

11              **Who Purchaser 365 Coffee Creamer in Oregon.**

12         "'[S]tanding is not dispensed in gross.'  It 'is claim specific and a plaintiff must

13   demonstrate standing for each claim [s]he seeks to press.'"  *Harris v. CVS Pharmacy, Inc.*, No.

14   13-cv-02329, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (quoting *DaimlerChrysler Corp.*

15   *v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L. Ed. 2d 589 (2006)).  "[S]tanding is claim- and

16   relief-specific, such that a plaintiff must establish Article III standing for each of her claims and

17   for each form of relief sought."  *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d

18   1051, 1064-65 (N.D. Cal. 2015) (citation and internal quotation marks omitted).  In a class action,

19   "at least one named plaintiff must have standing with respect to each claim the class

20   representatives seek to bring."  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107

21   (N.D. Cal. 2007).  Thus, when "a representative plaintiff is lacking for a particular state, all

22   claims based on that state's laws are subject to dismissal."  *In re Flash Memory Antitrust Litig.*,

23   643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing *Ditropan*, 529 F. Supp. 2d at 1106-07).

24         In *Carpenter v. PetSmart, Inc.*, the court held that the plaintiff lacked Article III standing

25   to pursue three common law claims on behalf of a putative nationwide class, even though the

26   complaint ostensibly listed "one generic 'fraud by omission' claim, one generic breach of implied

27   warranty claim, and one generic unjust enrichment claim."  *Carpenter*, 441 F. Supp. 3d at 1039.

28

1    The court reasoned that plaintiff improperly attempted to "assert fifty fraud by omission claims,

2    fifty breach of implied warranty claims, and fifty unjust enrichment claims - one of each claim

3    for each state - on behalf of fifty separate state-specific classes." *Id*.  Because Carpenter was a

4    California resident who purchased the relevant product in California, the Court held that he

5    lacked "standing to assert a claim against [Defendant] under any state's law but California's

6    because [he] did not suffer any injuries in fact traceable to any alleged violations of any other

7    states' laws.  Labeling the putative class as a 'nationwide class' [did] not overcome this fatal

8    deficiency." *Id*.  This same reasoning applies to the present matter.

9            Plaintiff is and has been a resident of California since at least 2020 and only alleges facts

10   demonstrating purchases of 365 Coffee Creamer in California.  *See* ECF No. 1, ¶¶95-96, 100.

11   Because Plaintiff does not reside in and has not suffered an injury in any other state, she "lack[s]

12   standing to assert claims based on those states' laws."  *Fenerjian v. Nongshim Co.*, 72 F. Supp.

13   3d 1058, 1082-83 (N.D. Cal. 2014); *see also Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897,

14   908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a

15   putative class action lacks standing to assert claims under the laws of states other than those

16   where the plaintiff resides or was injured."); *In re Packaged Seafood Prods. Antitrust Litig*., 242

17   F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that

18   Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have

19   purchased a product within the relevant state.").

20           Moreover, the appropriate time for dismissal is now, on the pleadings.  As detailed below,

21   the answer to this question has a direct impact on the Court's subject matter jurisdiction under

22   CAFA.  Further, the *Carpenter* court reasoned that it "should address standing prior to class

23   certification ... [because,] when a plaintiff's lack of standing is plain enough from the pleadings,

24   it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the

25   named plaintiffs are adequate representatives under Rule 23."  *Carpenter,* 441 F. Supp. 3d at

26   1039 (citations omitted); *see also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176

27   (N.D. Cal. 2017) (determining at the pleadings stage that plaintiffs lacked standing to bring

28

nationwide claims, and opting "to require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims"); *Ditropan*, 529 F. Supp. 2d at 1106-07 (dismissing claims brought under the laws of 24 states and requiring that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class").

The fact that Plaintiff also asserts a common law claim for unjust enrichment does not preclude dismissal of the Plaintiff's Oregon class because Article III standing requirements apply with equal force to both statutory and common law claims.  *See Corcoran v. CVS Health Corp.*, No. 15-cv-3504, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016) ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which they have alleged no connection. The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss Plaintiff's claims on behalf of putative class members residing in Oregon for lack of standing.

**B.** **The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.**

Plaintiff alleges subject matter jurisdiction under the Class Action Fairness Act of 2005, Pub. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332 ("CAFA").  *See* ECF No. 1, ¶116.  As the party invoking diversity jurisdiction, Plaintiff "bears the burden of establishing that jurisdiction exists."  *See Diva Limousine, Ltd. v, Uber Technologies, Inc.*, 392 F. Supp. 3d 1074, 1082 (N.D. Cal. 2019) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)).

**1.** **Plaintiff's Claims Lack Minimal Diversity.**

CAFA "vests the district court with 'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (quoting 28 U.S.C. § 1332(d)).  Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a

State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Absent Plaintiff's alleged class

of Oregon purchasers, the Complaint does not, on its face, allege minimal diversity.  Plaintiff and

WFM California (as a California corporation with its principal place of business in Emeryville)

are both citizens of California.  ECF No. 1, ¶¶117-118.  Further, because Plaintiff's Oregon class

claims should be dismissed for lack of standing, the Complaint does not allege facts establishing

that any member of a class of California purchasers is a citizen of any state other than California.

2.       **The Home-State Exception to CAFA Jurisdiction Applies to Plaintiff's**
         **Claims.**

Even if a class of California purchasers established minimal diversity, the Court must

decline to exercise subject matter jurisdiction because the home-state controversy exception to

CAFA jurisdiction plainly applies.  Under the home-state controversy exception, a federal district

court "***shall*** decline to exercise jurisdiction under" 28 U.S.C. § 1332(d)(2) when "two-thirds or

more of the class members of all proposed plaintiff classes in the aggregate, and the primary

defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. §

1332(d)(4)(B) (emphasis added).  Plaintiff correctly alleges that WFM California (the only

defendant) is a citizen of California.  ECF No. 1, ¶118.  Accordingly, the only real question with

respect to the application of the home-state exception is whether two-thirds or more of Plaintiff's

proposed class are citizens of California.  A common sense reading of Plaintiff's allegations

dictate that they are.

"[W]here plaintiff's own characterization demonstrates the action's local nature, no

further discovery or proof is necessary."  *Rodriguez v. Instagram, LLC*, No. 12-cv-06482, 2013

WL 3732883, at *3 (N.D. Cal. Jul. 15, 2013) (citations omitted).  While the Complaint alleges a

class of "California and Oregon" purchasers, for the reasons discussed in Section V(A)(2) above,

Plaintiff only has standing to assert claims on behalf of a putative class of California purchasers.

The most reasonable interpretation of a class of California purchasers is that it consists almost

entirely of California residents.  *See e.g., Cortez v. McClatchy Newspapers, Inc.*, No. 15-cv-

01891, 2015 WL 3181200, at **5-6 (E.D. Cal. Jun. 7, 2016) (reasonable interpretation of "all

-12-

1   persons in California who subscribed" is that it refers to people currently in California…"); s*ee*

2   *also Quesada v. Herb Thyme Farms, Inc.*, No. 11-cv-00016, 2011 WL 1195952, at *4 (C.D. Cal.

3   Mar. 28, 2011) ("definition indicates that Plaintiff's proposed Class is limited to purchasers

4   within California").

5          Several courts in the Ninth Circuit have held that when a complaint alleges a class of

6   California residents or California purchasers, then "greater than two-thirds of the members" are

7   citizens of California.  *See Rodriguez v. Instagram, LLC*, 2013 WL 3732883, at *3 (holding

8   home-state controversy exception applies and that "for a class of consumers residing in

9   California, at least two out of three are also California citizens."); *see also Quesada v. Herb*

10   *Thyme Farms, Inc.*, 2011 WL 1195952, at *4 (finding class defined as "all persons within the

11   state of California" satisfies the two-thirds element needed to establish local controversy

12   exception to CAFA); *Walker v. Apple, Inc.*, No. 15-cv-1147, 2015 WL 12699871, at *3 (S.D.

13   Cal. Sep. 17, 2015) (same);  *Flores v. Chevron Corp.*, No. 11-cv-02551, 2011 WL 2160420, at *3

14   (S.D. Cal. May 31, 2011) (same); *Rotenberg v. Brain Research Labs, LLC*, No. 09-cv-2914, 2009

15   WL 2984722, at *3 (N.D. Cal. Sep. 15, 2009) (same).  Indeed, as one court has noted, it is

16   common sense that a class of "all persons in California" likely consists of at least two-thirds

17   California citizens.  *Cortez v. McClatchy Newspapers*, 2015 WL 3181200, at **5-6 ("Courts in

18   this Circuit have not shied from making common sense judgments as to the citizenship of

19   purported class members.").  Thus, absent a putative class covering purchasers from other states,

20   the two-thirds requirement under the home-state exception is satisfied and the Court must decline

21   to exercise subject matter jurisdiction over this matter.

22   **C.      Plaintiff Failed to Allege a Plausible Claim of Unlawful, Unfair or Deceptive**

23   **         Business Practices Under the UCL or FAL.**

24          Plaintiff alleges statutory claims under the UCL and FAL for unlawful, unfair and

25   deceptive business practices.  *See* ECF No. 1, ¶¶135-160.  Each of these claims fails, as a matter of

26   law, for the fundamental reason that Plaintiff failed to allege sufficient facts to demonstrate a

27   plausible misrepresentation in the 365 Coffee Creamer label.  As several California and New York

28

1    district courts have repeatedly held in similar vanilla cases, Plaintiff has not plausibly alleged that

2    reasonable consumers would be deceived by the "vanilla" statement and associated vanilla images

3    on the 365 Coffee Creamer label.  Further, Plaintiff has not alleged a factual basis for inferring

4    that 365 Coffee Creamer contains artificial, as opposed to natural, flavoring ingredient, or that its

5    label does not comply with applicable Food and Drug Administration ("FDA") regulations for

6    flavor designations.  Plaintiff's allegations simply do not raise her alleged "right to relief above

7    the speculative level." *Twombly,* 550 U.S. at 555.  As such, her statutory claims should be

8    dismissed for failure to state a claim.

9         **1.    The Use of the Term "Vanilla" and Associated Images Are Not Misleading to**

10              **Reasonable Consumers.**

11         Deceptive labeling claims under the UCL and FAL are governed by the "reasonable

12   consumer" standard.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  This standard

13   requires that Plaintiff allege facts demonstrating that the challenged labeling statement(s) are

14   "likely to deceive a reasonable consumer."  *See Williams v. Gerber Products, Co.*, 552 F.3d 934,

15   938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Courts

16   may determine whether a label is likely to mislead reasonable consumers on a motion to dismiss

17   based on a review of the product packaging.  *See, e.g. Brown v. Starbucks Corp.*, No. 18-cv-2286-

18   JM, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019).

19         To show a product label is "likely to deceive" reasonable consumers, Plaintiff must allege

20   facts showing "more than a mere possibility that [a] label 'might conceivably be misunderstood by

21   some few consumers viewing it in an unreasonable manner.'  Rather, the reasonable consumer

22   standard requires a probability 'that a significant portion of the general consuming public or of

23   targeted consumers, acting reasonably under the circumstances, could be misled.'"  *Becerra v. Dr.*

24   *Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228-1229 (9th Cir. 2019) (quoting *Lavie*, 105 Cal. App.

25   4th at 508).  Although the question of whether a reasonable consumer is likely to be deceived is

26   often a question of fact, the issue is not triable if Plaintiff "cannot first identify a plausible

27   misrepresentation."  *Garcia v. Sony Computer Entmt. Am.*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal.

28

-14-                          Case No. 3:21-cv-04577-EMC

1   2012); *see also Hairston v. S. Beach Beverage Co.*, No. 12-cv-1429-JFW, 2012 WL 1893818, at

2   **4-5 (C.D. Cal. May 18, 2012) ("where a Court can conclude as a matter of law that members of

3   the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

4          Here, Plaintiff failed to allege a plausible misrepresentation.  Plaintiff alleges that the use

5   of term "vanilla" and images of a vanilla flower and vanilla beans on the 365 Coffee Creamer

6   front label mislead consumers into believing that the product's vanilla flavor comes exclusively or

7   predominantly from vanilla bean extract.  *See* ECF No. 1, ¶¶1-3, 35, 45-48.  No *reasonable*

8   consumer would draw such a conclusion from the product's "vanilla" statement and images.  The

9   consumer in a grocery store is looking, first and foremost, for coffee creamer – not vanilla.  The

10  vanilla statement "on the front of the [365 Coffee Creamer] allows the consumer to quickly

11  understand the flavor of the [creamer] and differentiate between products."  *Cosgrove v. Blue*

12  *Diamond Growers,* 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020).  Reasonable consumers

13  read the flavor indicator "vanilla" and conclude the product tastes like vanilla, as opposed to

14  hazelnut or some other flavor.

15         The label does not include any qualifying language, such as "made with vanilla extract" or

16  "100% vanilla extract" or anything else that might lead a reasonable consumer to conclude that the

17  product's vanilla flavor comes exclusively or predominantly from vanilla bean extract.  In fact, as

18  this Court correctly noted in its recent decision in *Nacarino v. Chobani, LLC*, No. 20-cv-07437-

19  EMC, 2021 WL 3487117 (N.D. Aug. 9, 2021), "[f]ederal courts have repeatedly rejected the

20  theory that reasonable consumers would interpret the word 'vanilla,' without qualifiers, on a

21  product label to indicate that a product's vanilla flavoring comes *exclusively* from the vanilla

22  plant."  *Nacarino,* 2021 WL 3487117, at *5 (emphasis original) (citing *Clark v. Westbrae Natural,*

23  *Inc.* ("*Clark II*"), No. 20-cv-03221-JSC, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021); *Cosgrove*,

24  2020 WL 7211218; *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-VEC, 2020 WL

25  6323775 (S.D.N.Y. Oct. 27, 2020)); *see also Fahey v. Whole Foods Market, Inc.* 2021 WL

26  2816919, at *2 (holding "that the word 'vanilla' without any qualifying terms does not lead a

27

28

1   reasonable consumer to believe that the vanilla flavor came exclusively or predominantly from

2   vanilla beans.").

3       Several district court decisions in New York used the same reasoning to dismiss largely

4   indistinguishable consumer deception claims brought under New York's General Business Laws

5   relating to vanilla ice cream, ice cream bars, and almond milk.  *See Steele v. Wegmans Food*

6   *Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (dismissing consumer deception claims

7   because the vanilla ice cream product was in fact vanilla flavored and the label did not reference

8   vanilla beans or vanilla extract); *Dashnau v. Unilever Manufacturing (US), Inc.,* No. 19-cv-10102-

9   KMK, 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he SDNY Vanilla Cases have

10  concluded that the word 'vanilla,' when used to describe a product such as ice cream or almond

11  milk, describes a flavor, not a particular ingredient."); *Cosgrove v. Blue Diamond Growers*, 2020

12  WL 7211218, at *3 ("Defendant's [Almondmilk] does not use the words 'vanilla bean' or 'vanilla

13  extract,' nor does it use language such as 'made with vanilla' or anything similar.  The Product

14  makes one representation – that it is vanilla flavored – and Plaintiffs do not allege that the Product

15  did not deliver on that representation.  This alone is fatal to Plaintiffs' case.").

16      The same reasoning and analysis of these California and New York decisions applies to the

17  present matter.  The 365 Coffee Creamer label promises the product will taste like vanilla; it does

18  not promise a specific or exclusive vanilla ingredient.  Although the front label includes images of

19  a vanilla flower and vanilla beans (ECF No. 1, ¶¶1, 46), these images do not convert the "vanilla"

20  statement from a general favor statement to a specific ingredient claim, promising that vanilla

21  bean extract is the exclusive flavor source.  *See Nacarino*, 2021 WL 3487117, at *6 ("no

22  reasonable consumer would take the Product's vanilla imagery…as indicating that the yogurt's

23  flavor is derived exclusively from the vanilla plant."); *see also Budhani v. Monster Energy Co.*,

24  No. 20-cv-1409-LJL, 2021 WL 1104988, at **6, 8 (S.D.N.Y. Mar. 22, 2021) (finding vanilla

25  flower image in conjunction with statement "Vanilla Cream" does not lead reasonable consumer

26  to conclude vanilla bean was the energy drink's exclusive or predominant vanilla flavor source).

27

28

1    The images and "vanilla" statement, at most, suggest that some of the creamer's flavor is

2 derived from vanilla extract. *Nacarino*, 2021 WL 3487117, at \*6 ("While the imagery may

3 suggest that at least some of the Product's flavor is derived from the vanilla bean or extract, it in

4 no way implies that they are the exclusive flavor source."). That is precisely what 365 Coffee

5 Creamer provides. Extractives from the vanilla plant are used in 365 Coffee Creamer as a

6 flavoring, and are properly disclosed as "natural flavors" in the ingredient statement – whether it is

7 used alone or combined with other natural flavors.[2] Plaintiff's Complaint admits this fact, by

8 conceding that the creamer contains at least a "*de minimis*" amount of vanilla extract. *See* ECF

9 No. 1, ¶¶52, 159.

10    Nothing in Plaintiff's Complaint distinguishes this case from *Clark II, Nacarino, Fahey,*

11 *Steele, Pichardo, Cosgrove, Dashnau* or *Budahni,* on this "vanilla" issue nor renders Plaintiff's

12 theory more plausible. While Plaintiff relies on product testing as support for her allegations that

13 365 Coffee Creamer contains less vanilla than consumers expect, these cases considered and

14 rejected similar allegations and arguments. Regardless, as detailed below, Plaintiff's testing is

15 materially flawed and unreliable, leaving her allegations of supposed artificial flavoring without

16 substance or factual support. Thus, the bare allegations of Plaintiff's Complaint do not plausibly

17 support an inference that reasonable consumers interpret "vanilla" on the 365 Coffee Creamer

18 label to mean that its flavor is derived exclusively from vanilla beans. Rather, consumers of 365

19 Coffee Creamer got what they paid for – vanilla flavored creamer. As the *Steele* court rhetorically

20 questioned: "What is misrepresented?" *Steele,* 2020 WL 3975461, at \*2. The answer here is the

21 same as in *Steele*: nothing.

22

23

_____

24 [2]  FDA regulations confirm that "extractives" from the vanilla plant are "natural flavor[s]" or
"natural flavoring" (21 C.F.R. 101.22(a)(3)), and expressly allow their listing on an ingredient list
25 as "natural flavors." 21 C.F.R. 101.22(h) ("The label of a food to which flavor is added shall
declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor,
26 and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor' or any
combination thereof as the case may be."). As discussed in greater detail in Section V(C)(2)
27 below, Plaintiff has no factual basis to allege that the natural flavors in 365 Coffee Creamer
include artificial instead of natural flavors.

28

**2.      Plaintiff Has Not Plausibly Alleged That 365 Coffee Creamer's Label Does Not Comply with Federal Regulations or That It Contains Artificial Flavors.**

"By defining unfair competition to include any '*unlawful* ... business act or practice' (§ 17200, italics added), the UCL permits violations of other laws to be treated as unfair competition that are independently actionable." *Kasky v. Nike, Inc.* 27 Cal. 4th 939, 949 (2002), as modified (May 22, 2002).  Plaintiff claims that WFM California's conduct is unlawful under the UCL because 365 Coffee Creamer's label allegedly violates FDCA labeling regulations as adopted under California's Sherman Law, and because 365 Coffee Creamer's label is false and misleading under the FAL.  *See* ECF No. 1, ¶¶135-146.

The FDCA governs the labeling of 365 Coffee Creamer and expressly preempts any state law provisions that are not identical to federal law.[3]  21 U.S.C. § 343-1(a)(3).  The FDA has issued regulations, *i.e.*, 21 C.F.R. section 101.22, that address the use and labeling of flavoring agents in food products and, as relevant to the present case, permit manufacturers to identify a product's characterizing flavors on its label.[4]  These regulations confirm that "extractives" from the vanilla plant are "natural flavor[s]" or "natural flavoring" (21 C.F.R. 101.22(a)(3)), and expressly allow their listing on an ingredient list as "natural flavors."  *See* 21 C.F.R. 101.22(h).

Plaintiff contends the 365 Coffee Creamer label violates these federal regulations because the product allegedly contains artificial flavors – vanillin and piperonal – without including the qualifying language "Artificially Flavored" on the product's front label.  ECF No. 1, ¶79.  Plaintiff

---

[3] Because Plaintiff Complaint fails to allege facts establishing that the 365 Coffee Creamer label violates any FDA labeling regulations, her state law claims (i.e., alleging the label must include the phrase "artificially flavored") are preempted.  *See Salazar v. Honest Tea Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) ("because plaintiff's allegations do not show a violation of the FDCA, plaintiff's state laws claims [were] preempted; if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA."); *see also Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d at 1120 (finding preemption because otherwise plaintiff "would necessarily impose a state-law obligation for trans fat disclosure that is not required by federal law"); *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("To the extent that Plaintiff seeks to regulate the term 'source' in the same manner as 'good source,' going beyond the boundaries of the regulation, this claim is preempted).

[4] The FDCA defines "food" to include drink products intended for human consumption.  *See* 21 U.S.C. § 321(f).

-18-

1    further contends that the alleged presence of these artificial flavoring ingredients renders the label

2    statements "Naturally Flavored" and "Natural Flavors" false and misleading.  *Id.*, ¶¶71-79.

3            FDA regulations define natural and artificial flavorings differently and only require the use

4    of the phrase "artificially flavored," or other similar qualifying language, on a product's label in

5    specific and limited circumstances – namely those involving artificial flavors.  *See* 21 C.F.R. §§

6    101.22(a)(1), (a)(3), (i)(1) & (i)(2).  Plaintiff's Complaint, however, does not allege any basis in

7    fact for inferring that 365 Coffee Creamer contains artificial flavors.  Accordingly, Plaintiff has

8    not alleged a plausible basis for finding that the 365 Coffee Creamer label violates the FDCA nor

9    that consumers may be deceived by the "natural" flavor statements.

10           FDCA regulations define "flavoring" as any ingredient "whose significant function in food

11   is flavoring rather than nutritional," 21 C.F.R. § 101.22(a)(3).  The regulations further distinguish

12   between natural flavors and artificial flavors.  The term "natural flavors" refers to "the essential

13   oil, oleoresin, essence or extractive … which contain the flavoring constituents derived from a

14   spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or

15   similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof,

16   whose significant function in food is flavoring rather than nutritional."  21 C.F.R. § 101.22(a)(3).

17   The term "artificial flavors," on the other hand, refers to "any substance, the function of which is

18   to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice,

19   edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy

20   products, or fermentation products thereof."  21 C.F.R. § 101.22(a)(1).  The regulations also

21   require that natural and artificial flavors be declared as such in the product's statement of

22   ingredients.  *See* 21 C.F.R. § 101.22(h)(1).

23           As discussed above, Plaintiff claims that the vanilla flavor in 365 Coffee Creamer comes,

24   at least in part, from artificial flavors.  ECF No. 1, ¶¶48, 52, 57.  The Complaint, however, does

25   not include sufficient factual allegations to establish, or even infer, the use of any artificial flavors

26   in 365 Coffee Creamer.  Nothing on the product's packaging or label gives Plaintiff any valid

27   basis for such a claim.  Quite the opposite.  The product's ingredient statement, as required by the

28

regulations, affirms it only uses *natural* flavoring agents – "natural flavors" – as does its front label – "naturally flavored." *Id.*, ¶¶1, 47.  Thus, the product labeling confirms its use of oils, essences and extractives that come from natural sources as defined in 21 C.F.R. section 101.22(a)(3), including extractives from the vanilla plant.

As has been typical of the slew of vanilla lawsuits filed by Plaintiff's counsel, the Complaint relies on unsubstantiated "analytical testing" conducted by an unidentified researcher to provide the supposed "factual" basis for claiming 365 Coffee Creamer contains artificial flavoring ingredients.[5]  ECF No. 1, ¶¶57-70.  Numerous courts have rejected these same analyses because the purported scientific testing (1) cannot remedy any otherwise implausible claim of deception, and (2) does not indicate anything about the source of any compound found to be present in the products (such as vanillin, which can be naturally derived from the vanilla bean).

In *Cosgrove*, the plaintiff alleged that a scientific test revealed that the vanilla almond milk product at issue "contain[ed] non-vanilla flavors which provide its vanilla taste and contain[ed] artificial flavors." *Cosgrove,* 2020 WL 7211218, at **1, 5.  The complaint included allegations about similar analytic testing results, which allegedly showed the presence of vanillin and other flavoring compounds.  The court, however, did not give any weight to the test results, because Plaintiff's theory that a reasonable consumer would believe that the product contains vanilla flavoring exclusively from the vanilla bean was implausible.  *Id.* at **3-5.

Other courts, including some in this district, agree; scientific testing cannot remedy an otherwise implausible claim of deception. *See, e.g., Clark*, 2020 WL 7043879, at *1 (vanilla claims implausible even though plaintiff cited and provided alleged results of vague "scientific testing"); *Barreto v. Westbrae Natural, Inc.*, No. 19-cv-9677-PKC, 2021 WL 76331, at *3 (S.D.N.Y. Jan. 7, 2021) (alleged GC-MS results insufficient to support otherwise implausible allegations that vanilla product labeling was misleading); *Steele*, 472 F. Supp. 3d at 50 (same);

---

[5] Plaintiff also alleges that future surveys, research and expert testimony "will demonstrate that the use of the term 'Naturally Flavored' is false and misleading."  ECF No. 1, ¶33.  Plaintiff's speculation, however, does not satisfy her obligation to plead existing facts demonstrating a right to relief that is not merely possible but plausible.

*Twohig v. Shop-Rite Supermarkets, Inc.,* No. 20-cv-0763-CS, 2021 WL 518021, at *3 (S.D.N.Y. Feb. 11, 2021). (same).  Thus, Plaintiff's alleged test results cannot remedy the implausible "exclusivity" claim nor refute the fact that the 365 Coffee Creamer, in fact, contains vanilla bean extractives.

Even assuming Plaintiff's testing could remedy an implausible deception theory (and it cannot), Plaintiff's analytical testing is unreliable and flawed, and therefore does not provide the necessary factual basis for alleging that 365 Coffee Creamer contains artificial flavors.  As a preliminary matter, no one with any scientific expertise supports Plaintiff's testing or claims on this point and Plaintiff does not attach the analytic testing to the Complaint.  As such, there is no way for the Court to review the testing's complete objectives, methodology, results, controls and conclusions.  The Court is instead asked to rely only on Plaintiff's attorney's impermissible, inadmissible lay interpretation of selectively presented results from the analysis.  Plaintiff's counsel is not qualified to offer these conclusions, nor address the numerous questions left open by the study.

For instance, it is unclear why the study did not specifically test for piperonal, and vanillin if their presence was a key indicator used in Plaintiff's argument.  This is the same flaw noted by the court in *Steele,* where the court dismissed a similar analysis on methodological grounds: "What is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers."  *Steele*, 472 F. Supp. 2d at 51.  The court accordingly dismissed plaintiff's contention that the lack of vanilla extract's chemical markers indicated that Wegmans' ice cream did not contain vanilla extract, holding that "the test was not sensitive enough to detect the markers with smaller profiles in the bean."  *Id.*  The same problem attends here because Plaintiff's summary of the test does not indicate whether the specific chemical markers were tested, and the Court is unable to review the actual analysis itself.

It is likewise unclear how this testing is able to discern between 365 Coffee Creamer "flavors" and other ingredients, and whether such flavors are able to survive the barrage of transformations, including possibly vaporization, ionization, mixing with other chemicals,

1    extraction, clarification and/or drying that may have been part of the testing.  Such transformations

2    could cause reactions that modify or eliminate some chemicals in the product.  Plaintiff's

3    methodology is further flawed as Plaintiff's summary of the testing does not indicate that a control

4    experiment was conducted on a sample with known and agreed flavor composition.  ECF No. 1,

5    ¶¶57-70.  Without such a control, Plaintiff has no basis to allege that her test could or should have

6    detected the small amounts of chemicals associated with vanillin which she claims are truant.

7          In *Clark II*, the same plaintiff's counsel argued, like here, that testing showed the presence

8    of artificial vanillin and another supposedly artificial ingredient (maltol), which allegedly provided

9    vanilla flavor and rendered the product mislabeled.  *Clark II*, 2021 WL 1580827, at **4-5.  The

10   Court rejected the claim, noting Plaintiff's counsel's concession that "vanillin is or can be derived

11   from the vanilla bean and that [p]laintiff ha[d] no good faith basis for alleging that the vanillin in

12   the [p]roduct is not from vanilla bean" or that vanillin or maltol were artificial flavors.  *Id*.  The

13   same is true here—the presence of vanillin in the analytic testing results does not suggest that the

14   vanillin is from an artificial non-vanilla source, or that the 365 Coffee Creamer's vanilla flavor

15   comes from the vanillin and not the vanilla extract.

16         Any inferences drawn from Plaintiff's unattached testing are unreliable and should be

17   disregarded.  Thus, she has not alleged a factual basis for asserting that the 365 Coffee Creamer

18   label violates FDA regulation or that its "natural" flavor statements are false or misleading.

19   **D.     Because She Has an Adequate Remedy at Law, Plaintiff Cannot Pursue Her**

20   **        Equitable Claim for Restitution under the UCL and FAL.**

21         If this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless dismiss her

22   claims for restitution under the UCL and FAL.  Both claims sound in equity. *See Nationwide*

23   *Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 9 Cal. 5th 279, 292 (2020).  Further,

24   Plaintiff requests an award of restitution.  *See* ECF No. 1, ¶¶146, 155, 160.  The Ninth Circuit

25   recently made clear in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), that

26   federal common law – not state law – governs claims of equitable relief in federal court and

27

28

consumers cannot seek equitable relief under UCL without first establishing that he or she lacks an adequate remedy at law.[6]

Plaintiff makes no effort at alleging that she lacks an adequate remedy at law in her Complaint because she has one.  Plaintiff could seek damages under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").  Indeed, Plaintiff served WFM California with the 30-day notice letter, required to seek damages under the CLRA, in June 2021.

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later abandoned her damages claim under the CLRA in favor of her claims for equitable restitution under the UCL.  *Sonner,* 971 F.3d at 834.  The district court subsequently dismissed the plaintiff's remaining claims for restitution, holding that she "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id*. at 838.  The Ninth Circuit affirmed, agreeing that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id*. at 844.  And because the plaintiff had not alleged – let alone demonstrated – that she lacked an adequate legal remedy, the court held that she could not seek restitution. *Id*.

This Court dismissed the plaintiff's equitable claims for restitution and disgorgement under the UCL in *Nacarino* because the plaintiff failed to establish that she lacked a adequate remedy at law based on similar vanilla allegations.  *Nacarino*, 2021 WL 3487117, *13.  Several district courts in this circuit, following *Sonner*, have also granted motions to dismiss claims for equitable relief under the UCL and FAL.  For example, in *Zaback v. Kellogg Sales Co.*, No. 20-cv-00268-BEN, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) – another "vanilla" case – the court concluded that *Sonner* "require[d]" dismissal of the entire case because all the claims sounded in equity and the plaintiff failed to allege that he lacks an adequate remedy at law.  The *Zaback* court

---

[6]  Although *Sonner* did not involve a FAL claim, the Ninth Circuit's reasoning as to the UCL should apply to FAL claims since both statutes only provide equitable relief.  "The remedies available in a UCL or FAL action are limited to injunctive relief and restitution." *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 130 (2009).

1    also rejected the argument that the *Sonner* decisions should be limited to its unique procedural

2    circumstances, citing a number of district court decisions that have applied *Sonner* to dismiss

3    similar claim at early stages of the litigation.  *Zaback*, 2020 WL 6381987, at *4, citing *In re*

4    *MacBook Keyboard Litig.*, No. 18-cv-2813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13,

5    2020); *Krommenhock v. Post Foods, LLC*, No. 16-cv-4958-WHO, 2020 WL 6074107, at *1 (N.D.

6    Cal. Sep. 29, 2020); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-769-CJC, 2020 WL

7    5492990, at *3 (C.D. Cal. Sep. 9, 2020).

8         *Sonner* precludes Plaintiff's demand for restitution in this case.  As the Ninth Circuit made

9    clear, a plaintiff seeking restitution must "plead 'the basic requisites of the issuance of equitable

10   relief' including 'the inadequacy of remedies at law."  *Sonner*, 971 F.3d at 844 (quoting *O'Shea v.*

11   *Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added).  Plaintiff, however, has not alleged that she

12   lacks an adequate remedy at law in her Complaint, nor could she since the CLRA authorizes

13   "actual damages" in addition to equitable restitution.  *See* Cal. Civ. Code § 1780(a)(1).  Absent

14   any plausible allegation that the CLRA's damages remedy is inadequate to compensate Plaintiff

15   for her alleged harm, *Sonner* bars her from seeking restitution — or any other equitable remedy.

16                              **VI.    CONCLUSION**

17        For the reasons stated herein, WFM California asks that this Court grant its motion and

18   dismiss Plaintiff's Complaint with prejudice.

19   Dated:  September 20, 2021                    BLAXTER | BLACKMAN LLP

20

21                                   By  _____
                                            /s/*Brian R. Blackman*
22                                         BRIAN R. BLACKMAN
                                           J.T. WELLS BLAXTER
23                                         DAVID P. ADAMS
                                           Attorneys for Defendant
24                                  WHOLE FOODS MARKET CALIFONRIA, INC.

25

26

27

28