Scott C. Borison (CA Bar No. 237708)
**BORISON FIRM, LLC**
1900 S Norfolk St Ste 350
San Mateo CA 94403
T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

Attorneys for Plaintiffs and the Proposed Class

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Kaaron Warren and Christina Reed, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-04577-EMC |
| Plaintiffs, | |
| - against - | First Amended Class Action Complaint |
| Whole Foods Market California, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff Kaaron Warran and Christina Reed ("Plaintiffs"), by attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

1.      Whole Foods Market California, Inc. ("defendant"), manufactures, distributes, markets, labels, and sells dairy coffee creamer under its 365 Everyday Value brand, purporting to be "Naturally Flavored" by "Vanilla," with a picture of three cured vanilla beans and a vanilla flower ("Product").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15




16   2.   "Vanilla" is written in all capital letters, highlighted on a blue background distinct

17 from the surrounding text.

18   3.   The vanilla beans and vanilla flower are about half the size of the cup of fresh coffee

19 which appears to contain white swirls of added creamer.

20 **I.   VANILLA FLAVOR**

21   4.   Dictionary definitions of the term "vanilla," both as a noun and adjective, link that

22 term with the vanilla plant.

23   5.   For example, the Merriam Webster Dictionary defines the noun as:[1]

24   1.   VANILLA BEAN: a commercially important extract of the vanilla

25   bean that is used especially as a flavoring;

26

27

28

[1] MERRIAM-WEBSTER DICTIONARY,https://www.merriam-webster.com/dictionary/vanilla

2

2.      any of a genus (Vanilla) of tropical American climbing epiphytic orchids. (capitalization in original).

6.      Other dictionaries have similar definitions that expressly connect the word "vanilla" with the plant.[2]

7.      The vanilla flower produces green vanilla beans.



8.      The beans develop their unique flavor from being cured in the tropical sun.



---

[2] See, e.g., Vanilla, AMERICAN  HERITAGE  DICTIONARY,
https://www.adhdictionary.com/word/search.html?q=vanilla (First noun definition: "Any of various tropical American vines of the genus Vanilla in the orchid family, especially V. planifolia, widely cultivated for its long narrow seedpods, which yield an aromatic substance used especially as a flavoring."); First adjective definition: "Flavored with vanilla: vanilla pudding."); Vanilla, COLLINS DICTIONARY,
https://www.collinsdictionary.com/us/dictionary/english/vanilla

**CLASS ACTION COMPLAINT**

9.      The flavoring principles of vanilla beans are extracted through alcohol.

Beginning                    Middle                          End



10.     The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



11.     Vanillin is the most significant component vanilla beans, and often used in place of the extractives of vanilla beans.

12.     The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin, and ethyl vanillin.

**CLASS ACTION COMPLAINT**

**II.     THE LABELING GIVES CONSUMERS THE IMPRESSION THE FLAVORING IS ONLY FROM NATURAL FLAVORS, INLUDING VANILLA**

13.     Consumers who view the front label of three cured vanilla beans and a vanilla flower will expect the predominant or exclusive source of the Product's vanilla taste will be the natural flavor of vanilla, and that the Product will not contain artificial flavoring.



14.     Even if consumers were to scrutinize the back label, which they are not required to do, nothing on the label including the ingredients list discloses that the Product contains added non-vanilla or artificial flavorings, as opposed to the unspecified "natural flavor."



**INGREDIENTS:** NONFAT MILK, CREAM, CANE SUGAR, <mark>NATURAL FLAVOR</mark>.

15.     Consumers are not told what is in the "Natural Flavor," and have no choice to take Defendant at its word that the Product is "Naturally Flavored."

16.     A natural flavor is defined as made from a natural source and through a natural process. 21 C.F.R. § 101.22(a)(3).

17.     An artificial flavor is made from an artificial source or through a non-natural process. 21 C.F.R. § 101.22(a)(1).

18.     Scientific testing of the Product in 2021 revealed that (1) the Product is not

1    "Naturally Flavored," (2) the amount of vanilla from the vanilla plant is negligible, and (3) the

2    vanilla flavoring mainly comes from artificial flavoring such as ethyl vanillin (2.205 PPM), and

3    vanillin (43.393 PPM) from sources other than the vanilla plant, circled in red in the table below.

**Sheehan & Associates, P.C., Project #062121-2**
**365 Organic Vanilla Coffee Creamer**
**Production Code: 11:43 JP**
**Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS**

Data File = TSQA4206

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 9 | 415688 | diacetyl | 0.129 |
| 148 | 226007 | acetic acid | 0.070 |
| 173 | 113925 | 3-penten-2-ol | 0.035 |
| 263 | 129644736 | acetoin | 40.190 |
| 280 | 116721 | 1,2-propylene glycol | 0.036 |
| 335 | 208333 | ethyl butyrate | 0.065 |
| 386 | 1986216 | furfural | 0.616 |
| 394 | 822761 | furfural isomer | 0.255 |
| 400 | 49449 | dimethyl sulfoxide (DMSO) | 0.015 |
| 412 | 75861 | furfuryl alcohol | 0.024 |
| 452 | 95273 | 2-heptanone | 0.030 |
| 500 | 5100776 | dimethyl sulfone | 1.581 |
| 510 | 47146 | ethyl 3-hydroxybutyrate | 0.015 |
| 572 | 11088433 | hexanoic acid | 3.437 |
| 577 | 215096 | ethyl hexanoate | 0.067 |
| 625 | 3023800 | cyclotene | 0.937 |
| 685 | 46854 | 2-nonanone | 0.015 |
| 694 | 753695 | guaiacol | 0.234 |
| 701 | 386293 | nonanal | 0.120 |
| 749 | 121282832 | maltol | 37.598 |
| 778 | 18014704 | octanoic acid | 5.585 |
| 783 | 207576 | benzoic acid | 0.064 |
| 788 | 577449 | ethyl octanoate | 0.179 |
| 814 | 5397267 | ethyl maltol | 1.673 |
| 817 | 3225770 | naphthalene-d8 (Internal Standard) | 1.000 |
| 837 | 443693 | 2,4-dihydroxybenzaldehyde | 0.138 |
| 857 | 1266443 | nonanoic acid | 0.393 |
| 875 | 41333 | p-anisaldehyde | 0.013 |
| 887 | 105245 | 2-undecanone | 0.033 |
| 897 | 219500 | delta-nonalactone | 0.068 |
| 951 | 3567755 | decanoic acid | 1.106 |
| 965 | 52849276 | piperonal | 16.383 |
| 974 | 810993 | ethyl decanoate | 0.251 |
| 1024 | 139976208 | vanillin | 43.393 |
| 1057 | 7112069 | ethyl vanillin | 2.205 |
| 1068 | 270601 | 2-tridecanone | 0.084 |
| 1086 | 139783 | delta-decalactone + butylated hydroxytoluene (BHT Antioxidant) | 0.043 |
| 1103 | 167973 | 3-methoxy-4-propoxybenzaldehyde | 0.052 |
| 1112 | 508975 | dodecanoic acid | 0.158 |
| 1140 | 1243437 | ethyl dodecanoate | 0.385 |
| 1189 | 115584 | triethyl citrate | 0.036 |
| 1228 | 104115 | 2-pentadecanone | 0.032 |
| 1257 | 131846 | delta-dodecalactone | 0.041 |
| 1271 | 93793 | myristic acid | 0.029 |
| 1300 | 1041471 | ethyl myristate | 0.323 |
| 1400 | 73208 | caffeine | 0.023 |
| 1501 | 306400 | ethyl palmitate | 0.095 |
| 1759 | 98557 | ethyl oleate | 0.031 |
| 1797 | 43476 | ethyl stearate | 0.013 |
| | | **Total (excluding internal standard)** | **158.297** |

6

19.     No reasonable consumer would expect artificial ethyl vanillin when a label – especially from Whole Foods – promises a product that is "Naturally Flavored."

20.     Ethyl vanillin does not come from the vanilla plant at all.

21.     Instead, it is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. *See* 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

22.     The vanillin in the Product is mostly <u>not</u> from the vanilla plant, based on (1) its relatively high level, (2) the absence of expected amounts of key aromatic compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, and 4-methoxybenzyl alcohol (p-anisyl alcohol), and (3) the detection of guaiacol at atypically elevated levels (0.234 PPM), not explained by relation to any other compounds.

23.     Guaiacol is the source of 85% of artificial vanillin and considered a "fingerprint" of artificial vanilla.[3]

24.     Guaiacol is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.

25.     Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation, and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

26.     Vanillin made from guaiacol is an artificial flavor because guaiacol is an artificial source, and it is made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

## III.     FALSE AND MISLEADING FRONT LABEL STATEMENTS

27.     In order to combat vanilla fraud, the FDA has strict rules regarding use of the term "vanilla" on the labels of food products.[4]

28.     If the vanilla flavor comes from non-vanilla plant sources, the FDA mandates that the label must inform consumers by indicating whether the flavoring is from natural vanilla, artificial flavors, or "Other Natural Flavor[s]," in letters not less than one-half the height of the letters used

---

[3] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.
[4] See John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").

**CLASS ACTION COMPLAINT**

1   for "Vanilla" and immediately adjacent to "Vanilla." 21 C.F.R. § 101.22(i).

2       29.     Moreover, the FDA has stated that it is misleading to label a food with a

3   characterizing flavor of vanilla as "Naturally Flavored" when it contains vanillin from sources other

4   than the vanilla plant.

5       30.     The FDA has stated that "the only vanillin that the agency will regard as "natural

6   vanillin" is vanillin derived from vanilla beans, which is rarely if ever produced for economic

7   reasons.

8       31.     FDA regulations regarding characterizing flavoring effectively establish custom and

9   practice in the industry so that consumers' experience with that custom and practice primes them to

10  infer from food labeling the ingredients from which the Products may get its flavor.

11      32.     Defendant does not comply with FDA labeling requirements because it displays

12  "Vanilla" on the front, accompanied by the term, "Naturally Flavored," yet the Product has added

13  ethyl vanillin, an artificial flavoring. 21 C.F.R. § 101.22(i)(2).

14      33.     Since the Product has a characterizing flavor of vanilla, and contains the artificial

15  flavoring of ethyl vanillin, 21 C.F.R. § 101.22(i)(2) applies, which states:

16          If the food contains any artificial flavor which simulates, resembles or
            reinforces the characterizing flavor, the name of the food on the principal
17          display panel or panels of the label shall be accompanied by the common or
18          usual name(s) of the characterizing flavor, in letters not less than one-half
            the height of the letters used in the name of the food and the name of the
19          characterizing flavor shall be accompanied by the word(s) "artificial" or
            "artificially flavored", in letters not less than one-half the height of the
20          letters in the name of the characterizing flavor, e.g., "artificial vanilla",
            "artificially flavored strawberry", or "grape artificially flavored".
21

22      34.     Defendant's front label not only omits "Artificially Flavored," but misleads

23  consumers by its claim to be "Naturally Flavored."

24      35.     Furthermore, competing (French) vanilla coffee creamers products  do  comply with

25  FDA labeling requirements, and truthfully disclose they are "Artificially Flavored."[5] *See* 21 C.F.R.

26  § 101.22(i)(2).

27

28  _____

[5] "French Vanilla" is another term used to describe "Madagascar Vanilla," because this island was once a French colony.

**CLASS ACTION COMPLAINT**



36.     The artificially flavored vanilla coffee creamers cost an average of $2.49 per 16 OZ[6], a substantial amount less than defendant's Product, $3.89 per 16 OZ.

37.     The Organic 365 Vanilla Creamer is fifty-six percent more expensive than competitor products, even though both contain artificial vanilla flavor and little, if any, natural vanilla.[7]

|                                        | $    | OZ | $/OZ     |
| -------------------------------------- | ---- | -- | -------- |
| Artificially Flavored Vanilla Creamers | 2.49 | 16 | 0.155625 |
| Organic 365 Vanilla Creamer            | 3.89 | 16 | 0.243125 |

38.     The ingredient list is misleading, because Defendant is required to identify the added ethyl vanillin as "artificial flavor" on the ingredient list.

39.     In correspondence with vanilla suppliers, the FDA has emphasized that "'natural flavor' must not be used in such a way to imply that it is a 'natural vanilla flavor', because it is not derived from vanilla beans. *See* Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell,

---

[6] The 16 oz cost is based on the price of these products which are sold in sizes of 32 oz.
[7] The Organic 365 Vanilla Creamer costs $ 0.0875 more per ounce. This is 56.2 percent more than $ 0.155625.

**CLASS ACTION COMPLAINT**

February 25, 2016.

40. According to the FDA, where a food's characterizing flavor is vanilla and "the flavoring was not derived from vanilla…[it] must be identified as 'artificially flavored.'" *Id.*

41. By placing the term "Naturally Flavored" directly below "Vanilla," consumers will expect most, or all the Product's flavoring to be from the natural flavor of vanilla.

42. "Naturally Flavored" is false, deceptive, and misleading even if the Product contains vanilla flavor from non-synthetic, non-vanilla sources because the flavoring is not derived from vanilla.

43. Even if consumers expected non-vanilla, non-synthetic flavoring, they would still be misled due to flavor from artificial sources.

44. Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, and (2) from artificial flavoring such as ethyl vanillin, Defendant pretends otherwise, deceiving consumers.

45. Defendant knows consumers will pay more for the Product because its representations include pictures of vanilla, "Vanilla," "Naturally Flavored," and omits that it is artificially flavored.

46. The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

47. The addition of more natural vanilla flavor to the Product in place of artificial flavor would cost approximately $ 0.07 per 16 oz, a *de minimis* increase in cost, especially considered the premium price of the Product compared to similar products.

## IV.    RELIANCE AND ECONOMIC INJURY

48. Plaintiffs saw and relied on the label, which misleadingly states, "Naturally Flavored," "Vanilla," and has pictures of vanilla.

49. Plaintiffs sought to purchase a product with a materially greater amount of natural flavor from vanilla beans than was present and without artificial flavoring.

50.     Plaintiffs sought to purchase a product with only flavors from natural, non-synthetic sources.

51.     Plaintiffs sought to purchase a product without synthetic and artificial flavor ingredients.

52.     Plaintiffs expected that most or all the vanilla taste would be from natural vanilla.

53.     Plaintiffs did not expect the vanilla taste to be provided mostly, or all, by artificial flavoring such as ethyl vanillin and vanillin from non-vanilla sources.

54.     Plaintiffs would not have purchased the Product if she knew the representations were false and misleading.

55.     The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

56.     Plaintiffs paid more for the Product than they otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

57.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.89 per 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## INTRADISTRICT ASSIGNMENT

58.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in San Francisco County, and this action should be assigned to the Oakland or San Francisco Division.

## PARTIES

59.     Plaintiff Kaaron Warren is a resident of San Francisco, San Francisco County, California.

60.     During the relevant statutes of limitations for each cause of action, during 2020 and more recently, between April and May 2021, Plaintiff Warren purchased the Product for personal and household consumption and use, in reliance on the representations.

61.     Plaintiff Warren purchased the Product at defendant's stores, including 450 Rhode

1 | Island Street San Francisco CA 94107.

2 |       62.     Plaintiff Christina Reed is a resident of Reno, Washoe County, Nevada.

3 |       63.     During the relevant statutes of limitations for each cause of action, during 2020 and more recently, between July and May August 2021, Plaintiff Reed purchased the Product for personal and household consumption and use, in reliance on the representations.

6 |       64.     Plaintiff Reed purchased the Product at defendant's stores, including the location at 6139 S Virginia St Reno, NV 89502.

8 |       65.     Plaintiffs understood "Naturally Flavored" to mean the Product was flavored exclusively or predominantly from the natural flavor of vanilla, images of which were presented on the label.

11 |       66.     Plaintiffs did not expect artificial flavoring because the Product was labeled "Naturally Flavored."

13 |       67.     Plaintiffs expected that if the Product contained non-vanilla flavors, they would be from non-synthetic, natural sources.

15 |       68.     Plaintiffs understood the "Naturally Flavored" statement to mean the Product did not contain any artificial or synthetic flavoring.

17 |       69.     Plaintiffs try to consume natural foods that are flavored only or mainly by their characterizing ingredients, or at a minimum, only with natural flavors, and avoids synthetic and artificial flavor ingredients as much as possible.

20 |       70.     Plaintiffs expected more than a vanilla taste, but natural vanilla from vanilla beans.

21 |       71.     Plaintiffs would buy the Product again if assured it was flavored mainly by the natural flavor of vanilla instead of artificial flavoring like ethyl vanillin.

23 |       72.     Defendant Whole Foods Market California, Inc., is a California corporation with a principal place of business in Emeryville, Alameda County, California.

25 |       73.     Defendant is the West Coast subsidiary of the Whole Foods grocery chain.

26 |       74.     Whole Foods operates over five hundred stores in the United States.

27 |       75.     One-fifth of these stores are in California.

28 |       76.     Whole Foods is known for its organic and high-quality grocery products.

12

77.     Whole Foods is self-described as "more than just a grocery store, [because] [they] seek out the finest natural and organic foods available [and] maintain the strictest quality standards."[8]

78.     Whole Foods manufactures or contracts to manufacture, private label products under its brand, "365 Everyday Value."

79.     The quality of products under the 365 Everyday Value is considered equal to, or greater than, similar products sold by national brands.

80.     Whole Foods also sells its products through the internet, via its own website, and via the website of corporate parent, Amazon.com, Inc. ("Amazon").

81.     The Organic 365 Everyday Value Vanilla Dairy Coffee Creamer is available at all of Defendant's stores and from its online platforms.

82.     Defendant's Vanilla Dairy Coffee Creamer is purported to be distributed by Whole Foods Market, which is headquartered in Austin, Texas.



83.     Defendant is the entity responsible for the Product's labeling and approves and authorizes all products bearing the 365 Everyday Value brand.

## JURISDICTION AND VENUE

84.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)(A).

85.     Plaintiff Christina Reed, a citizen of Nevada, seeks to represent a class consisting of Nevada purchasers of the Product.

---

[8] Website Text Preview, Google search of whole foods,
https://www.amazon.com/alm/storefront/ref=grocery_wholefoods?almBrandId=VUZHIFdob2xlIEZvb2Rz

86.     Defendant is a California citizen because it is incorporated in, and has its principal place of business, in California.

87.     Plaintiff Reed is a citizen of a different state than Defendant.

88.     Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

89.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff Warren in this District and her awareness of the representations and omissions identified here.

90.     This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

92.     Plaintiff Warren and Plaintiff Reed seek to represent all persons who purchased the Product for personal or household consumption and use since June 7, 2015, residing in California (the "California Class") and in Nevada (the "Nevada Class") (collectively, the "Class")

> California Class: All persons residing in California who purchased the Product for personal or household consumption and use since June 6, 2015 (the "California Class").

> Nevada Class: All persons residing in Nevada who purchased the Product for personal or household consumption and use since June 6, 2015 (the "Nevada Class").

93.     Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

94.     The Class consists of thousands of persons, and joinder is impracticable.

**CLASS ACTION COMPLAINT**

95.     Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

96.     Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

97.     Plaintiffs are adequate representatives because her interests do not conflict with other members.

98.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

99.     A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

100.    Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

101.    Plaintiffs seek certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

102.    Plaintiffs seek certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members and Defendant has acted or refused to act on grounds that apply generally to the Class.

103.    Plaintiffs anticipate that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

### FIRST CLAIM
### (CALIFORNIA CLASS)
**(Violation of California Business & Professions Code §§ 17200 *et seq.* – Unlawful Conduct Prong of the UCL)**

104.    Plaintiff Warren incorporates all preceding paragraphs.

105.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

106.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

15

3.      21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

4.      21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

5.      21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

6.      21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

7.      21 C.F.R. § 102.5, which prohibits misleading common or usual names.

107.    Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

108.    Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

1.   Section 110100 (adopting all FDA regulations as state regulations);

2.   Section 110290 ("In determining whether the labeling or advertisement of a

16

food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.   The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

109.    Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

110.    Defendant leveraged its deception to induce Plaintiff Warren and California Class Members to purchase a product that was of lesser value and quality than advertised.

111.    Defendant's deceptive advertising caused Plaintiff Warren and California Class Members to suffer injury-in-fact and to lose money or property.

112.    Defendant's actions denied Plaintiff Warren and California Class Members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different amounts of natural vanilla flavor.

113.    Had Plaintiff Warren and California Class Members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

114.    In accordance with California Business & Professions Code section 17203, Plaintiffs seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

115.    Plaintiff Warren seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

116.    Plaintiff Warren incorporates all preceding paragraphs.

117.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

118.    The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

119.    The gravity of the conduct outweighs any conceivable benefit.

120.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff Warren and California Class Members.

121.    Defendant's representations and omissions are likely to deceive Plaintiff Warren and California Class Members about the absolute and relative amounts of natural vanilla flavor and artificial flavoring.

122.   Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

123.   In accordance with California Business & Professions Code section 17203, Plaintiff Warren seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

124.   Plaintiff Warren seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

125.   Plaintiff Warren incorporates all preceding paragraphs.

126.   California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

127.   Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of vanilla and natural ingredients in the Product.

128.   In reliance on these false and misleading advertising claims, Plaintiff Warren and California Class Members purchased and consumed the Product without the knowledge it contained a *de minimis* amount of natural vanilla flavor ingredients and a substantial amount of non-vanilla ingredients, including from synthetic sources.

129.   Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

130.   As a result, Plaintiff Warren and California Class Members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**CLASS ACTION COMPLAINT**

## FOURTH CLAIM
## (ON BEHALF OF THE CALIFORNIA CLASS)
### (Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*)

131.    Plaintiff Warren incorporates all preceding paragraphs.

132.    The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

133.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase, and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA, including but not limited to:

1. Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have – flavor mainly from the natural flavor of vanilla, and without artificial flavors, because consumers are accustomed to and expect the presence of artificial flavors to be declared on the front label, and also listed in the ingredients;

2. Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits, or ingredients that they do not have – flavor from the Product's characterizing flavor, which in this instance, is vanilla; a significant, appreciable amount of natural vanilla flavor from extracts of vanilla beans; no artificial flavors;

3. Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another – that the Product contained a non-de minimis amount of natural vanilla flavor from the vanilla beans pictured on the label;

4. Section 1770(a)(9), which prohibits advertising goods with intent not to sell

20

them as advertised – the Product was sold as having its characterizing flavor comprised of vanilla ingredients and natural flavors, when it did not contain the expected amounts and proportions of these ingredients; and

5.  Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not – Plaintiff Warren thought she was buying a vanilla coffee creamer which got most, or a significant amount of its vanilla taste, from natural vanilla ingredients and natural flavors, when this was not true.

134.  Defendant violates federal and identical state law by failing to distinguish between vanilla and non-vanilla flavors.

135.  Defendant violates federal and state law by not disclosing "Artificially Flavored" on the front label, as required by 21 C.F.R. § 101.22(i)(2).

136.  Plaintiff Warren requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780.

137.  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff Warren and California Class Members will continue to suffer harm.

138.  Pursuant to the provisions of California Civil Code section 1782(a), Plaintiff Warren, through counsel, sent CLRA Notices, certified mail, return receipt requested, on June 16, 2021, to Defendant's principal place of business and registered agent in this State, and to the address of its parent company, 550 Bowie St, Austin TX 78703-4644.

139.  Plaintiff Warren informed Defendant that she purchased the Product for personal and household use and consumption between April and May 2021, among other times, at Whole Foods locations including 450 Rhode Island Street San Francisco CA 94107

140.  The CLRA Notices detailed the violations of the CLRA.

141.  Plaintiff Warren, on behalf of herself and all others similarly situated in California,

1  and the general public, demanded that Defendant remedy the violations within 30 days of receipt of

2  the CLRA Notices and take corrective action.

3      142.    Plaintiff Warren informed Defendant that if it failed to take these corrective actions,

4  she would bring a class action, in any appropriate court, or add claims under the CLRA to any

5  existing class action, asserting claims for actual and punitive damages under the CLRA and any

6  other applicable consumer laws and regulations to compel these steps, as well as seeking any other

7  legally appropriate restitution for damages, attorneys' fees, costs, incentive awards, and the costs of

8  class notice and administration.

9      143.    The CLRA Notices were each received and signed for by Defendant or its agents, at

10 the address of its principal place of business and registered agent in this State on June 21, 2021.

11     144.    The CLRA Notice sent to the address of Defendant's parent company, 550 Bowie

12 St, Austin TX 78703-4644, lacks tracking information after June 24, 2021, and the postal service

13 has no further information.

14     145.    In addition to the three CLRA Notices sent by certified mail, return receipt requested,

15 three CLRA Notices were sent by first-class mail to the same addresses.

16     146.    None of the CLRA Notices sent only by first-class mail were returned to sender.

17     147.    Defendant failed to respond to the CLRA Notices.

18     148.    Plaintiff Warren seeks injunctive relief, restitution, and monetary damages for

19 Defendant's violations of the CLRA.

20     149.    Therefore, Plaintiff prays for relief as set forth below.

**FIFTH CLAIM**
**(ON BEHALF OF THE NEVADA CLASS)**
**(Violation of Nevada Revised Statutes (NRS), Title 52, Chapter 598 *et seq.*)**

23     150.    Plaintiff Reed incorporates by reference all preceding paragraphs.

24     151.    NRS 41.600(1) provides the right for an action to be brought by any person who is a

25 victim of consumer fraud.

26     152.    NRS 41.600(2)(e) includes any of the deceptive trade practices described in the

27 NDTPA's General Provision, NRS 598.0915 to 598.0925.

28     153.    Thus, a private right of action for violation of the NDTPA's General Provisions is

**CLASS ACTION COMPLAINT**

expressly allowed if brought in the form of an action for consumer fraud under NRS 41.600.

154.    NRS 598.0923(3) defines a deceptive trade practice as the violation of a state or federal statute or regulation relating to the sale or lease of goods or services.

155.    NRS 598.0955 exempts a party from liability if its conduct complies with the orders or rules of, or a statute administered by, a federal, state, or local government agency.

156.    Defendant's representation of the Product as "Vanilla" and "Naturally Flavored" are false, deceptive, and misleading because the amount of vanilla is *de minimis*, and most of the flavoring is from ethyl vanillin and vanillin from non-vanilla sources.

157.    Defendant violates identical federal and Nevada law with respect to the labeling of a food's flavor, by failing to distinguish between natural and artificial flavors.

158.    Defendant violates federal and state law by not disclosing "Artificially Flavored" on the front label, as required by 21 C.F.R. § 101.22(i)(2).

**FOURTH CLAIM**
**Unjust Enrichment**
**(ON BEHALF OF THE CALIFORNIA AND NEVADA CLASSES)**

159.    Plaintiffs incorporate all preceding paragraphs.

160.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiffs and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

**JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiffs demand a jury trial on all causes of action so triable.

WHEREFORE, Plaintiffs, on behalf of themselves and Members of the Proposed Class, pray for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiffs as representatives of their respective Classes, and designating Plaintiffs' counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq.;

D.   For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq.*;

E.   For punitive damages;

F.   For interest at the legal rate on the foregoing sums;

G.   For attorneys' fees;

H.   For costs of suit incurred; and

I.   For such further relief as this Court may deem just and proper.

Dated:   October 12, 2021

Respectfully submitted,

/s/  Spencer Sheehan

Spencer Sheehan*
SHEEHAN & ASSOCIATES, P.C.
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
T: (516) 268-7080
F: (516) 234-7800
spencer@spencersheehan.com

Scott C. Borison (CA Bar No. 237708)
BORISON FIRM, LLC
1900 S Norfolk St Ste 350
San Mateo CA 94403
T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

*Pro Hac Vice* Application Granted, Pending or Forthcoming

**CLASS ACTION COMPLAINT**