1   BRIAN R. BLACKMAN (SBN 196996)
    bblackman@blaxterlaw.com
2   J.T. WELLS BLAXTER (SBN 190222)
    wblaxter@blaxterlaw.com
3   DAVID P. ADAMS (SBN 312003)
    dadams@blaxterlaw.com
4   BLAXTER | BLACKMAN LLP
    601 California Street, Suite 1505
5   San Francisco, California 94108
    Telephone: (415) 500-7700
6
    Attorneys for defendant WHOLE FOODS
7   MARKET CALIFORNIA, INC.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  KAARON WARREN and CHRISTINA          Case No. 3:21-cv-04577-EMC
    REED, individually, and on behalf of those
12  similarly situated,                  **DEFENDANT'S NOTICE OF MOTION
                                         AND MOTION TO DISMISS
13              Plaintiffs,              PLAINTIFFS' FIRST AMENDED
                                         COMPLAINT; MEMORANDUM OF
14         v.                            POINTS AND AUTHORITIES**

15  WHOLE FOODS MARKET CALIFORNIA,       Date:   January 6, 2022
    INC.                                 Time:   1:30 P.M.
16                                       Crtrm: 5, 17th Floor
                Defendant.
17                                       The Honorable Edward M. Chen

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2022 at 1:30 P.M., or as soon thereafter as counsel may be heard in Courtroom 5 of the above-entitled Court, located in the United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Whole Foods Market California, Inc. ("WFM California"), will and hereby does move to dismiss the First Amended Complaint ("FAC") of plaintiffs Kaaron Warren and Christina Reed ("Plaintiffs") pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6).

WFM California moves for dismissal of the FAC pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that plaintiff Reed lacks standing to assert claims against WFM California and therefore her individual and Nevada subclass claims should be dismissed. Plaintiff Warren lacks standing to represent Nevada residents. Thus, the Court lacks subject matter jurisdiction because plaintiff Warren's claims lack minimal diversity and are subject to the home-state exception to the exercise of original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 USC § 1332(d)(2), (4). WFM California also moves to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) on the grounds that the FAC does not allege a plausible theory of deception and Plaintiffs have an adequate remedy at law.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Timothy Horn, all other pleadings, papers, records and documentary materials on file in this action, and such further evidence and argument as the Court may allow at the hearing on this Motion.

Dated:  November 12, 2021                    BLAXTER | BLACKMAN LLP


By _____/s/_Brian R. Blackman_____
                    BRIAN R. BLACKMAN
                    J.T. WELL BLAXTER
                    DAVID P. ADAMS
                    Attorneys for Defendant
        WHOLE FOODS MARKET CALIFORNIA, INC.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.     STATEMENT OF ISSUES TO BE DECIDED..........................................................1

II.    INTRODUCTION.......................................................................................................1

III.   FACTUAL ALLEGATIONS......................................................................................4

IV.   LEGAL STANDARDS ..............................................................................................5

V.    ARGUMENT ...........................................................................................................6

    A.    Plaintiffs Lack Standing to Assert Claims under Nevada Law and on Behalf of Nevada Residents...........................................................................6

        1.    Plaintiff Reed Lacks Standing to Sue WFM California for Violations of the NDTPA and Unjust Enrichment ..........................................7

        2.    Plaintiff Warren Lacks Standing to Assert Claims on Behalf of Nevada Residents ...........................................................................9

    B.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff Warren's Claims ......11

        1.    Plaintiff Warren's Claims Lack Minimal Diversity ....................................11

        2.    The Home-State Exception to CAFA Jurisdiction Applies to Plaintiff Warren's Claims..........................................................................12

    C.    Plaintiffs Failed to Allege a Plausible Claim of Unlawful, Unfair or Deceptive Business Practices Under the UCL, FAL or CLRA..............................13

        1.    The Use of the Term "Vanilla" and Associated Images Are Not Misleading to Reasonable Consumers. ......................................................14

        2.    Plaintiffs Have Not Plausibly Alleged That 365 Coffee Creamer's Label Does Not Comply with Federal Regulations or That It Contains Artificial Flavors ........................................................................17

    D.    Because She Has an Adequate Remedy at Law, Plaintiff Warren Cannot Pursue Her Equitable Claim for Restitution under the UCL and FAL ..................22

VI.   CONCLUSION ........................................................................................................24

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3

*Abrego Abrego v. The Dow Chem. Co.*
   443 F.3d 676 (9th Cir. 2006)..................................................................11

4

5

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937 L.Ed.2d 868 (2009) ...............................6

6

*Barreto v. Westbrae Natural, Inc.*
   2021 WL 76331 (S.D.N.Y. Jan. 7, 2021)...............................................20

7

8

*Becerra v. Dr. Pepper/Seven Up, Inc.*
   945 F.3d 1225 (9th Cir. 2019) ...............................................................14

9

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................6, 14

10

11

*Bender v. Williamsport Area Sch. Dist.*
   475 U.S. 534 (1986) .................................................................................5

12

*Brown v. Starbucks Corp.*
   2019 WL 996399 (S.D. Cal. Mar. 1, 2019)...........................................14

13

14

*Budhani v. Monster Energy Co.*
   2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) .......................................16

15

*Calvert v. Huckins*
   875 F. Supp. 674 (E.D. Cal. 1995).........................................................4

16

17

*Carpenter v. PetSmart, Inc.*
   441 F. Supp. 3d 1028 (S.D. Cal. 2020) .............................................9, 10

18

*Chandler v. State Farm Mut. Auto Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010).................................................................6

19

20

*Clark v. Westbrae Natural, Inc.*
   2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) .....................................3, 20

21

*Clark v. Westbrae Natural, Inc.*
   2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) ...................................15, 22

22

23

*Corcoran v. CVS Health Corp.*
   2016 WL 4080124 (N.D. Cal. July 29, 2016) .....................................10, 11

24

*Cosgrove v. Blue Diamond Growers*
   2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ..........................3, 15, 16, 20

25

26

*Cortez v. McClatchy Newspapers, Inc.*
   2015 WL 3181200 (E.D. Cal. Jun. 7, 2016)........................................12, 13

27

*DaimlerChrysler Corp. v. Cuno*
   547 U.S. 332 (2006) .............................................................................6, 7

28

*Dashnau v. Unilever Manufacturing (US), Inc.*
    2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021) ................................................................16

*Del Webb Communities, Inc. v. Partington*
    652 F.3d 1145 (9th Cir. 2011) ..........................................................................................8

*Diva Limousine, Ltd. v, Uber Technologies, Inc.*
    392 F. Supp. 3d 1074 (N.D. Cal. 2019) ..........................................................................11

*Ebner v. Fresh, Inc.*
    838 F.3d 958 (9th Cir. 2016) ...........................................................................................14

*Fahey v. Whole Foods Market, Inc.*
    2021 WL 2816919 (N.D. Cal. Jun. 30, 2021) ............................................................3, 15

*Fenerjian v. Nongshim Co.*
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................................................10

*Flores v. Chevron Corp.*
    2011 WL 2160420 (S.D. Cal. May 31, 2011) ..................................................................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*
    528 U.S. 167 (2000) ...........................................................................................................7

*Garcia v. Sony Computer Entmt. Am.*
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..........................................................................14

*Gibson v. Jaguar Land Rover N. Am., LLC*
    2020 WL 5492990 (C.D. Cal. Sep. 9, 2020) ..................................................................23

*Hairston v. S. Beach Beverage Co.*
    2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................................14

*Harris v. CVS Pharmacy, Inc.*
    2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ....................................................................6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................................7

*In re Ditropan XL Antitrust Litig.*
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................7, 10

*In re Effexor Antitrust Litig.*
    337 F. Supp. 3d 435, 458 (D. N.J. 2018) ..........................................................................7

*In re Flash Memory Antitrust Litig.*
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) .......................................................................7, 11

*In re MacBook Keyboard Litig.*
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................................................23

*In re Packaged Seafood Prods. Antitrust Litig.*
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...........................................................................10

*Johnson v. Nissan N. Am., Inc.*
    272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................................................10

*Jones v. Micron Tech. Inc.*
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ..............................................................................10

*Krommenhock v. Post Foods, LLC*
    2020 WL 6074107 (N.D. Cal. Sep. 29, 2020) ..................................................................23

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ............................................................................................................7

*Nacarino v. Chobani, LLC*
    2021 WL 3487117 (N.D. Cal. Aug. 9, 2021)  ...................................................3, 15, 16, 23

*Neale v. Volvo Cars of N. Am.*
    794 F.3d 353 (3d Cir. 2015)................................................................................................7

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..........................................................................................................24

*Parks Sch. of Bus, Inc. v. Symington*
    51 F.3d 1480 (9th Cir 1995)................................................................................................6

*Peviani v. Hostess Brands, Inc.*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...........................................................................18

*Pichardo v. Only What You Need, Inc.*
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020)  .............................................................3, 15

*Prescott v. Slide Fire Solutions, LP*
    410 F. Supp. 3d 1123 (D. Nev. 2019) ................................................................................8

*Quesada v. Herb Thyme Farms, Inc.*
    2011 WL 1195952 (C.D. Cal. Mar. 28, 2011) ...........................................................12, 13

*Ranza v. Nike, Inc.*
    793 F.3d 1059 (9th Cir. 2015)............................................................................................4

*Rodriguez v. Instagram, LLC*
    2013 WL 3732883 (N.D. Cal. Jul. 15, 2013) .............................................................12, 13

*Rotenberg v. Brain Research Labs, LLC*
    2009 WL 2984722 (N.D. Cal. Sep. 15, 2009)..................................................................13

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)............................................................................................6

*Salazar v. Honest Tea Inc.*
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ..............................................................................18

*Scott v. Breeland*
    792 F.2d 925 (9th Cir. 1986)........................................................................................6, 11

*Sears v. Russell Road Food and Beverage, LLC*
    460 F. Supp. 3d 1065 (D. Nev. 2020) ...................................................................8

*Sonner v. Premier Nutrition Corp.*
    971 F.3d 834 (9th Cir. 2020) ................................................1, 22, 23, 24

*Southern Service Corp. v. Excel Bldg. Services, Inc.*
    617 F. Supp. 2d 1097 (D. Nev. 2007) ...................................................................8

*Steele v. Wegmans Food Markets, Inc.*
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) .........................................3, 15, 17, 20, 21

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (2009) ...................................................................7

*Trazo v. Nestle USA, Inc.*
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ...................................................18

*Twohig v. Shop-Rite Supermarkets, Inc.*
    2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ...................................................20

*Valley Forge Christ. College v. Americans United*
    454 U.S. 464 (1982) ...................................................................7

*Walker v. Apple, Inc.*
    2015 WL 12699871 (S.D. Cal. Sep. 17, 2015) ...................................................13

*Wang ex rel. United States v. FMC Corp.*
    975 F.2d 1412 (9th Cir. 1992) ...................................................................5

*Williams v. Gerber Products, Co.*
    552 F.3d 934 (9th Cir. 2008) ...................................................................14

*Zaback v. Kellogg Sales Co.*
    2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ...................................................23

## CALIFORNIA CASES

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009) ...................................................................22

*Kasky v. Nike, Inc.*
    27 Cal. 4th 939 (2002) ...................................................................17

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ...................................................................14

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*
    9 Cal. 5th 279 (2020) ...................................................................22

## STATUTES

21 C.F.R. § 101.22 ...................................................................17, 18, 19, 20

21 U.S.C. § 321(f) ...................................................................18

21 U.S.C. § 343-1 (a)(3) ...................................................................................................18

28 U.S.C. § 1332 ...............................................................................................................11

28 U.S.C. § 1332(d) .......................................................................................................1, 11

28 U.S.C. § 1332(d)(2)(A) .......................................................................................2, 11, 12

28 U.S.C. § 1332(d)(4)(B) ...............................................................................................12

California Business & Professions Code §§ 17200, *et seq.* ..............................................5

California Business & Professions Code §§ 17500, *et seq.* ..............................................5

California Civil Code § 1750, *et seq.* ...............................................................................5

California Civil Code § 1780(a)(1) ...................................................................................24

Nevada Revised Statute § 41.600 ......................................................................................8

Nevada Revised Statute §§ 598, et seq. ............................................................................5

Nevada Revised Statute § 598.0923..................................................................................8

Fed. R. Civ. P. 12(b)(1) ................................................................................................5, 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Plaintiffs have standing to sue WFM California under Nevada law and on behalf of Nevada residents?

2.   Whether, absent plaintiff Reed's Nevada claims and the Nevada subclass, this Court has subject matter jurisdiction over plaintiff Kaaron Warren's claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)?

3.   Whether Plaintiffs plausibly alleged that reasonable consumers are deceived by 365 Coffee Creamer's label?

4.   Whether Plaintiffs failed to plausibly and adequately allege that the product does not comply with federal and state food laws and regulations?

5.   Should the Court dismiss plaintiff Warren's equitable claims under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020), because she has not alleged that she lacks an adequate remedy at law?

### II.   INTRODUCTION

This lawsuit challenges the labeling of 365 Everyday Value Vanilla Coffee Creamer ("365 Coffee Creamer").  Defendant Whole Foods Market California, Inc. ("WFM California") sells 365 Coffee Creamer at its retail grocery stores in California.  It does not own or operate any Whole Foods Market stores in Nevada and did not sell the creamer in Nevada nor to plaintiff Christina Reed.  The product's front label includes the word "vanilla" to identify how the product will taste and to differentiate it from other versions of 365 Coffee Creamer, including hazelnut.

Plaintiffs Kaaron Warren and Christina Reed (collectively "Plaintiffs") allege that the use of "vanilla" on the product's front label is unlawful and misleading because it leads consumers to believe that the product's vanilla flavor comes ***exclusively and/or predominately*** from vanilla beans.  Plaintiffs make these allegations even though they admit 365 Coffee Creamer contains at least some natural flavoring extracted from vanilla beans (*i.e.*, vanilla extract), and that its packaging does not affirmatively represent that the product is "made with" or "contains" a specific

1   amount of vanilla extract or that its flavoring is "exclusively," "purely," or "100%" derived from

2   vanilla beans.  Plaintiffs are not entitled to relief from this Court and their First Amended

3   Complaint ("FAC") should be dismissed for the following reasons.

4       *First,* the Court lacks subject matter jurisdiction.  WFM California does ***not*** own or operate

5   any Whole Foods Market stores in Nevada and did not market or sell the 365 Coffee Creamer to

6   plaintiff Reed.  Thus, plaintiff Reed lacks standing to sue WFM California on her alleged Nevada

7   law claims.  Plaintiff Warren only alleges purchasing the creamer product in California and,

8   therefore, does not have standing to assert claims under Nevada law or on behalf of a Nevada

9   subclass of consumers.  Absent a Nevada subclass, Plaintiffs have not alleged the minimal

10  diversity required for jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §

11  1332(d)(2)(A) ("CAFA").  Even if they could, the home-state controversy exception to CAFA

12  jurisdiction requires the Court decline to exercise subject matter jurisdiction over this local action.

13      *Second*, Plaintiffs' claims are implausible.  They lack the factual support necessary to push

14  them across the line from the "possible" to the "plausible."  Indeed, common sense and common

15  knowledge compel the conclusion that *reasonable* consumers understand the label statement

16  "vanilla" to refer to how the product will taste – not what specific ingredient imparts that flavor.

17  There is nothing in the word "vanilla," nor in the vanilla plant and bean images on the label, that

18  suggests to reasonable consumers that the product's flavor comes exclusively and/or

19  predominately from the vanilla bean.  In fact, as conceded in the FAC, 365 Coffee Creamer

20  contains at least some vanilla extract, which is included within the "natural flavors" statement in

21  the product's ingredient list.

22      *Third*, Plaintiffs have not alleged any facts that tend to establish the 365 Coffee Creamer's

23  label does not comply with federal regulations or that the product contains artificial, as opposed to

24  natural, flavoring ingredients.  The testing allegations, which Plaintiffs rely on to establish the

25  alleged use of artificial vanillin, are flawed, unreliable and fail to remedy Plaintiffs' otherwise

26  implausible claim of deception.  In fact, numerous courts faced with these same "vanilla" claims

27

28

have rejected similar analytic testing results as establishing a factual basis for inferring the presence of artificial flavoring ingredient.

*Finally*, plaintiff Warren's equitable claims should be dismissed because she has not alleged that she lacks an adequate remedy at law.  The FAC includes a claim for actual damages under California's Consumer Legal Remedies Act based on the same allegations that apply to all of plaintiff Warren's other claims.  Thus, plaintiff Warren has an adequate remedy at law and her equitable claims should be dismissed.

This action is largely indistinguishable from an ever-growing number of consumer deception lawsuits filed in California and New York targeting vanilla-flavored products based on the same general allegations and theories of deception.[1]  District courts in both states have dismissed many of these lawsuits on the basis that the plaintiffs had not alleged plausible claims of consumer deception.  *See Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879, at *1 (N.D. Cal. Dec. 1, 2020); *Fahey v. Whole Foods Market, Inc.*, Case No. 20-cv-06737-JST, 2021 WL 2816919, at *2 (N.D. Cal. Jun. 30. 2021); *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117 (N.D. Aug. 9, 2021); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-VEC, 2020 WL 6323775, at **3-5 (S.D.N.Y. Oct. 27, 2020); and *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993-VM, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020).  The legal reasoning and conclusions of these cases apply with equal force to the present matter.  All of Plaintiffs' claims fail as a matter of law and should be dismissed.

---

[1]  Plaintiffs' counsel filed several of these actions against Whole Foods Market Group, Inc. and WFM California relating to several different 365 products labeled as "vanilla," including *Burke v. Whole Foods Market Group, Inc.*, Southern District of New York, Case No. 19-cv-05913-CBA; *Pinkston v. Whole Foods Market Group, Inc.*, Southern District of New York, Case No. 19-cv-09362-LJL; *Hiland v. Whole Foods Market Group, Inc.,* Southern District of New York, Case No. 20-cv-01680-PMH; *Fisher v. Whole Foods Market Group, Inc.*, Southern District of New York, Case No. 20-cv-05339-GHW; and *Fahey v. Whole Foods Market California, Inc.*, Northern District of California, Case No. 20-cv-06737-JST.  The *Burke*, *Pinkston*, and *Fisher* actions were voluntarily dismissed while defendant's motions to dismiss were pending.  Judge Jon S. Tigar dismissed the *Fahey* action in response to WFM California's motion to dismiss.  *See Fahey v. Whole Foods Market, Inc.*, 2021 WL 2816919 (N.D. Cal. Jun. 30. 2021).

### III.   FACTUAL ALLEGATIONS

WFM California owns and operates the Whole Foods Market stores located in California that are part of the Northern California Region.  *See* Declaration of Timothy Horn ("Horn Decl."), ¶2.  This *region* generally covers the Fresno store and all California stores north of Fresno.  *Id.*  WFM California, however, does not own or operate the Whole Foods Market store located at 6139 S. Virginia Street, Reno, Nevada ("Reno Store") or any of the other Whole Foods Market stores located in Nevada.  *Id.*  The Reno Store is owned and operated by WFM Northern Nevada, Inc. ("WFM NN").[2]  *Id.*, ¶3.

WFM California sells a variety of private label food products at its stores under the "365 Everyday Value" brand name, including coffee creamer.  ECF No. 19 [FAC], ¶1.  365 Coffee Creamer is sold in 16 oz bottles and comes in two flavors, vanilla and hazelnut.  *Id.*

Plaintiff Warren alleges that she purchased 365 Coffee Creamer from her Whole Foods Market store in San Francisco, California in 2020 and more recently in April and May 2021.  ECF No. 19, ¶¶59-61.  Plaintiff Reed alleges that she purchased 365 Coffee Creamer from the Reno Store in Nevada during these same general time periods.  *Id.*, ¶64.  Plaintiffs allege that the 365 Coffee Creamer's front label included the statements "Vanilla" and "Naturally Flavored" along with images of a vanilla flower and vanilla beans.  *Id.*, ¶1.  The creamer's ingredient list identifies "Natural Flavors" as the flavoring ingredients.  *Id.*, ¶14.

Plaintiffs contend the front label statement "Vanilla" is false and misleading because it leads consumers to believe that 365 Coffee Creamer's vanilla taste comes "exclusively and/or predominately" from vanilla beans.  ECF No. 19, ¶¶13, 41, 48, 52 & 65.  Plaintiffs also claim the

---

[2]  WFM NN is a wholly owned subsidiary of WFM California. *See* Horn Decl., ¶3.  Courts in this Circuit recognize "a general presumption in favor of respecting the corporate entity," and only, "on rare occasions, have shown a willingness to 'pierce the corporate veil' and attribute a subsidiary's presence within the forum state to its parent company for jurisdictional purposes." *Calvert v. Huckins,* 875 F. Supp. 674, 678 (E.D. Cal. 1995).  Indeed, the alter ego test may only be used to "extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  Plaintiffs have not alleged any facts from which the Court might infer that WFM California owns and operates the Reno Store, nor that WFM NN's conduct in operating that store may be imputed to WFM California through an agency or alter ego theory.

front label images of the vanilla flower and bean reinforce this alleged consumer understanding. *Id.*, ¶13.  Plaintiffs separately contend the label statements "Naturally Flavored" and "Natural Flavors" are false or misleading because the coffee creamer contains artificial or synthetic flavoring ingredients.  *Id.*, ¶¶14-26, 42-44 & 66-68.  Plaintiffs contend the label violates federal labeling statutes because the presences of these artificial ingredients requires that the label include the statement "artificially flavored."  *Id.*, ¶¶32-34, 38, 135 & 157-158.

Based on these allegations, Plaintiffs assert claims of unlawful and deceptive business practices and advertising in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. ("UCL), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL") and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"), and Nevada's Deceptive Trade Practices Act, Nevada Revised Statute, Title 52, Chapter 598 *et seq*. ("NDTPA").  ECF No. 19, ¶¶104-158.  Plaintiffs bring their claims on behalf of themselves and separate classes of California and Nevada residents "who purchased the Product for personal or household consumption and use since June 7, 2015."  *Id*., ¶92.  Plaintiffs demand restitution, disgorgements, actual damages, punitive damages, and injunctive relief.  *Id.*, ¶¶114-115, 123-124, 130, 148 and p. 23:26-24:14-19.

## IV.   LEGAL STANDARDS

WFM California moves to dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Rule 12(b)(1):**  Federal courts are courts of limited jurisdiction and, therefore, only possess power authorized by Article III of the United States Constitution and statutes enacted by Congress.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  Federal courts cannot consider claims for which they lack subject matter jurisdiction.  *See Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).  A party may challenge subject matter jurisdiction, at the pleading stage, by motion to dismiss.  Fed. R. Civ. P. 12(b)(1).  Further, because standing relates to the Court's subject matter jurisdiction, it is properly raised by a Rule 12(b)(1) motion to dismiss.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th

Cir. 2010).  The party invoking the Court's jurisdiction (in this case Plaintiffs) has the burden of establishing it exists.  *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**Rule 12(b)(6):**  A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir 1995).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The Supreme Court has emphasized, as relevant here, that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 50 U.S. at 555 (internal quotation marks and citations omitted).  After accepting the well-pleaded allegations, a court then determines whether a complaint alleges a "plausible" claim for relief.  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id.*, quoting *Twombly*, 550 U.S. at 557.

## V.     ARGUMENT

### A.     Plaintiffs Lack Standing to Assert Claims under Nevada Law and on Behalf of Nevada Residents.

"'[S]tanding is not dispensed in gross.'  It 'is claim specific and a plaintiff must demonstrate standing for each claim [s]he seeks to press.'"  *Harris v. CVS Pharmacy, Inc.*, No. 13-cv-02329, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L. Ed. 2d 589 (2006)).  "[S]tanding is claim- and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and

for each form of relief sought." *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (citation and internal quotation marks omitted).  "We do not exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative facts' as another claim." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 393 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).  In a class action, "at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).  Thus, when "a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing *Ditropan*, 529 F. Supp. 2d at 1106-07).

1. **Plaintiff Reed Lacks Standing to Sue WFM California for Violation of the NDTPA and Unjust Enrichment.**

"Article III standing is a threshold inquiry in every case and one in which '[t]he party invoking federal jurisdiction bears the burden of [proof].'"  *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 458 (D. N.J. 2018) (quoting *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 561 (1992)).  Article III standing requires plaintiff Reed demonstrate: (1) she suffered some actual or threatened injury; (2) her injury is fairly traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury.[3]  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-181 (2000).  Thus, to establish her Article III standing plaintiff Reed must allege facts demonstrating she has been injured by defendant WFM California's challenged conduct.

The same is generally true of the standing requirements for plaintiff Reed's NDTPA claims; she must plead facts demonstrating a direct injury from WFM California's actions.  *See*

---

[3] Standing requirements impose prudential limitations on the Court's jurisdiction:  (1) a party must assert his own legal rights and interests, not those of others; (2) courts will not adjudicate "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is protected or regulated by the statute or constitutional guarantee in question.  *See Valley Forge Christ. College v. Americans United*, 454 U.S. 464, 474-475 (1982); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009).

*Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1153 (9th Cir. 2011) ("The standing issue turns on whether [defendant's] business practices 'directly harmed' [plaintiff].") Specifically, plaintiff Reed brings her NDTPA claims pursuant to Nevada Revised Statute ("NRS") section 41.600.  *See* ECF No. 19, ¶151.  "NRS 41.600 grants standing in consumer fraud cases to 'any person who is a victim of consumer fraud.'"  *Southern Service Corp. v. Excel Bldg. Services, Inc.*, 617 F. Supp. 2d 1097, 1099 (D. Nev. 2007) (quoting NRS § 41.600(1)).  "[T]o be a victim under this statute, the plaintiff need only have been 'directly harmed' by the defendant."  *Sears v. Russell Road Food and Beverage, LLC*, 460 F. Supp. 3d 1065, 1070 (D. Nev. 2020) (citing *Del Webb Communities,* 652 F.3d at 1145).  Thus, "NRS 41.600 generally limits standing to those who were 'directly harmed' by a defendant's deceptive trade practices."  *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1145 (D. Nev. 2019) (citing *Del Webb Communities*, 652 F.3d at 1153).

To establish her direct injury, plaintiff Reed alleges that WFM California violated state and federal regulations "relating to the sale or lease of goods or services" in violation of NRS section 598.0923(3).  *See* ECF No. 19, ¶154.  In particular, plaintiff Reed alleges WFM California violated state and federal labeling regulations by selling her 365 Coffee Creamer whose label representations "Vanilla" and "Naturally Flavored" were false and misleading as to the amount of real vanilla used in the product and the presence of artificial flavors.  *Id.*, ¶¶156-158.  Plaintiff Reed alleges she has been injured because she paid more for the deceptively labeled creamer than she otherwise would have.  *Id.*, ¶¶56-57.

These allegations, however, fail to demonstrate plaintiff Reed's standing under either Article III or the NDTPA because WFM California did not market or sell the 365 Coffee Creamer to her.  WFM California does not own or operate the Reno Store at which plaintiff Reed claims she purchased the 365 Coffee Creamer.  *See* Horn Decl., ¶2.  That store is owned and operated by WFM NN and plaintiff Reed claims must be brought against that entity in Nevada.  Thus, plaintiff Reed has not been injured, directly or otherwise, by WFM California and her Nevada claims – for violation of the NDTPA and unjust enrichment – should be dismissed for lack of standing.

1

2. **Plaintiff Warren Lacks Standing to Assert Claims on Behalf of Nevada Residents.**

2

3      Plaintiff Warren also cannot assert claims under Nevada law nor represent a subclass of

4  Nevada residents because she did not purchase 365 Coffee Creamer in Nevada.[4]  The Court,

5  therefore, should dismiss any claims brought by plaintiff Warren on behalf of class members who

6  purchased 365 Coffee Creamer outside of California for lack of standing.  *See Carpenter v.*

7  *PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1040-1041 (S.D. Cal. 2020) ("Plaintiffs must show they

8  have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under

9  the laws of states where they have alleged no injury, residence, or other pertinent connection.")

10      In *Carpenter v. PetSmart, Inc.*, the court held that the plaintiff lacked Article III standing

11  to pursue three common law claims on behalf of a putative nationwide class, even though the

12  complaint ostensibly listed "one generic 'fraud by omission' claim, one generic breach of implied

13  warranty claim, and one generic unjust enrichment claim."  *Carpenter,* 441 F. Supp. 3d at 1039.

14  The court reasoned that plaintiff improperly attempted to "assert fifty fraud by omission claims,

15  fifty breach of implied warranty claims, and fifty unjust enrichment claims - one of each claim

16  for each state - on behalf of fifty separate state-specific classes." *Id.*  Because Carpenter was a

17  California resident who purchased the relevant product in California, the Court held that he

18  lacked "standing to assert a claim against [Defendant] under any state's law but California's

19  because [he] did not suffer any injuries in fact traceable to any alleged violations of any other

20  states' laws.  Labeling the putative class as a 'nationwide class' [did] not overcome this fatal

21  deficiency." *Id.*  This same reasoning applies to the present matter.

22      Plaintiff Warren is and has been a resident of California since at least 2020 and only

23  alleges facts demonstrating purchases of 365 Coffee Creamer in California.  *See ECF No. 19,*

24

---

25  [4]  The FAC alleges that both Plaintiffs – Warren and Reed – seeks to represent a class of "all
persons who purchased [365 Coffee Creamer] for personal or household consumption and use
26  since June 7, 2015, residing in California and in Nevada."  ECF No. 19, ¶¶92.  The Fifth Claim for
violation of the NDTPA, however, is only alleged on behalf of plaintiff Reed and the Nevada
27  subclass.  *Id.*, ¶150.  Plaintiff Warren, therefore, must seek to represent these Nevada residents
based on her claims under California law.

28

¶¶59-60.  Because plaintiff Warren does not reside in and has not suffered an injury in Nevada, she "lack[s] standing to assert claims based on those states' laws."  *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *see also Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state.").

Moreover, the appropriate time for dismissal is now, on the pleadings.  As detailed below, the answer to this question has a direct impact on the Court's subject matter jurisdiction under CAFA.  Further, the *Carpenter* court reasoned that it "should address standing prior to class certification ... [because,] when a plaintiff's lack of standing is plain enough from the pleadings, it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23."  *Carpenter,* 441 F. Supp. 3d at 1039 (citations omitted); *see also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (determining at the pleadings stage that plaintiffs lacked standing to bring nationwide claims, and opting "to require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims"); *Ditropan*, 529 F. Supp. 2d at 1106-07 (dismissing claims brought under the laws of 24 states and requiring that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class").

The fact that plaintiff Warren also asserts a common law claim for unjust enrichment does not preclude dismissal of the Nevada subclass because Article III standing requirements apply with equal force to both statutory and common law claims.  *See Corcoran v. CVS Health Corp.*, No. 15-cv-3504, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016) ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which they have

alleged no connection.  The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss all claims under Nevada law and on behalf of the Nevada subclass because there is no plaintiff with standing to assert those claims against WFM California.

**B.      The Court Lacks Subject Matter Jurisdiction Over Plaintiff Warren's Claims.**

Plaintiffs allege subject matter jurisdiction under the Class Action Fairness Act of 2005, Pub. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332 ("CAFA").  *See* ECF No. 19, ¶116.  As the party invoking diversity jurisdiction, Plaintiffs "bear the burden of establishing that jurisdiction exists."  *See Diva Limousine, Ltd. v, Uber Technologies, Inc.*, 392 F. Supp. 3d 1074, 1082 (N.D. Cal. 2019) (quoting *Scott v. Breeland*, *supra,* 792 F.2d at 927).

**1.      Plaintiff Warren's Claims Lack Minimal Diversity.**

CAFA "vests the district court with 'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (quoting 28 U.S.C. § 1332(d)).  Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Absent Plaintiffs' alleged subclass of Nevada resident, the FAC does not, on its face, allege minimal diversity.  Plaintiff Warren and WFM California (as a California corporation with its principal place of business in Emeryville) are both citizens of California.  ECF No. 19, ¶¶59, 72.  Further, because plaintiff Reed's Nevada claims, and by extension her Nevada subclass, should be dismissed for lack of standing, the FAC does not allege facts establishing that any member of a class of California residents (*see* ECF No. 19, ¶92) is a citizen of any state other than California.

1        **2.**        **The Home-State Exception to CAFA Jurisdiction Applies to Plaintiff**

2                **Warren's Claims.**

3        Even if a class of California residents established minimal diversity, the Court must

4  decline to exercise subject matter jurisdiction because the home-state controversy exception to

5  CAFA jurisdiction plainly applies.  Under the home-state controversy exception, a federal district

6  court "***shall*** decline to exercise jurisdiction under" 28 U.S.C. § 1332(d)(2) when "two-thirds or

7  more of the class members of all proposed plaintiff classes in the aggregate, and the primary

8  defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. §

9  1332(d)(4)(B) (emphasis added).  Plaintiffs correctly allege that WFM California (the only

10 defendant) is a citizen of California.  ECF No. 19, ¶72.  Accordingly, the only real question with

11 respect to the application of the home-state exception is whether two-thirds or more of Plaintiffs'

12 proposed class are citizens of California.  A common sense reading of Plaintiffs' allegations

13 dictate that they are.

14       "[W]here plaintiff's own characterization demonstrates the action's local nature, no

15 further discovery or proof is necessary."  *Rodriguez v. Instagram, LLC*, No. 12-cv-06482, 2013

16 WL 3732883, at *3 (N.D. Cal. Jul. 15, 2013) (citations omitted).  While the FAC alleges a class

17 of "California and Nevada" residents, for the reasons discussed in Section V(A) above, plaintiff

18 Reed should be dismissed and plaintiff Warren only has standing to assert claims on behalf of a

19 putative class of California purchasers.  The most reasonable interpretation of a class of

20 California purchasers is that it consists almost entirely of California residents.  *See e.g., Cortez v.*

21 *McClatchy Newspapers, Inc.*, No. 15-cv-01891, 2015 WL 3181200, at **5-6 (E.D. Cal. Jun. 7,

22 2016) (reasonable interpretation of "all persons in California who subscribed" is that it refers to

23 people currently in California…"); s*ee also Quesada v. Herb Thyme Farms, Inc.*, No. 11-cv-

24 00016, 2011 WL 1195952, at *4 (C.D. Cal. Mar. 28, 2011) ("definition indicates that Plaintiff's

25 proposed Class is limited to purchasers within California").

26       Several courts in the Ninth Circuit have held that when a complaint alleges a class of

27 California residents or California purchasers, then "greater than two-thirds of the members" are

28

citizens of California.  *See Rodriguez v. Instagram, LLC*, 2013 WL 3732883, at *3 (holding home-state controversy exception applies and that "for a class of consumers residing in California, at least two out of three are also California citizens."); *see also Quesada v. Herb Thyme Farms, Inc.*, 2011 WL 1195952, at *4 (finding class defined as "all persons within the state of California" satisfies the two-thirds element needed to establish local controversy exception to CAFA); *Walker v. Apple, Inc.*, No. 15-cv-1147, 2015 WL 12699871, at *3 (S.D. Cal. Sep. 17, 2015) (same);  *Flores v. Chevron Corp.*, No. 11-cv-02551, 2011 WL 2160420, at *3 (S.D. Cal. May 31, 2011) (same); *Rotenberg v. Brain Research Labs, LLC*, No. 09-cv-2914, 2009 WL 2984722, at *3 (N.D. Cal. Sep. 15, 2009) (same).  Indeed, as one court has noted, it is common sense that a class of "all persons in California" likely consists of at least two-thirds California citizens.  *Cortez v. McClatchy Newspapers*, 2015 WL 3181200, at **5-6 ("Courts in this Circuit have not shied from making common sense judgments as to the citizenship of purported class members.").  Thus, absent a putative class covering purchasers from other states, the two-thirds requirement under the home-state exception is satisfied and the Court must decline to exercise subject matter jurisdiction over this matter.

**C.**    **Plaintiffs Failed to Allege a Plausible Claim of Unlawful, Unfair or Deceptive Business Practices Under the UCL, FAL and CLRA.**

Plaintiff Warren alleges statutory claims under the UCL, FAL and CLRA for unlawful, unfair and deceptive business practices.  *See* ECF No. 19, ¶¶104-149.  Each of these claims fails, as a matter of law, for the fundamental reason that Plaintiffs failed to allege sufficient facts to demonstrate a plausible misrepresentation in the 365 Coffee Creamer label.  As several California and New York district courts have repeatedly held in similar vanilla cases, Plaintiffs have not plausibly alleged that reasonable consumers would be deceived by the "vanilla" statement and associated vanilla images on the 365 Coffee Creamer label.  Further, Plaintiffs have not alleged a factual basis for inferring that 365 Coffee Creamer contains artificial, as opposed to natural, flavoring ingredient, or that its label does not comply with applicable Food and Drug Administration ("FDA") regulations for flavor designations.  Plaintiffs' allegations simply do not

raise Warren's alleged "right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  As such, her statutory claims should be dismissed for failure to state a claim.

> **1.      The Use of the Term "Vanilla" and Associated Images Are Not Misleading to Reasonable Consumers.**

Deceptive labeling claims under the UCL, FAL and CLRA are governed by the "reasonable consumer" standard.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).  This standard requires that Plaintiffs allege facts demonstrating that the challenged labeling statement(s) are "likely to deceive a reasonable consumer."  *See Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Courts may determine whether a label is likely to mislead reasonable consumers on a motion to dismiss based on a review of the product packaging.  *See, e.g., Brown v. Starbucks Corp.*, No. 18-cv-2286-JM, 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019).

To show a product label is "likely to deceive" reasonable consumers, Plaintiffs must allege facts showing "more than a mere possibility that [a] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'  Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled.'"  *Becerra v. Dr. Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228-1229 (9th Cir. 2019) (quoting *Lavie*, 105 Cal. App. 4th at 508).  Although the question of whether a reasonable consumer is likely to be deceived is often a question of fact, the issue is not triable if Plaintiffs "cannot first identify a plausible misrepresentation."  *Garcia v. Sony Computer Entmt. Am.*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012); *see also Hairston v. S. Beach Beverage Co*., No. 12-cv-1429-JFW, 2012 WL 1893818, at **4-5 (C.D. Cal. May 18, 2012) ("where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").

Here, Plaintiffs failed to allege a plausible misrepresentation.  Plaintiffs allege that the use of term "vanilla" and images of a vanilla flower and vanilla beans on the 365 Coffee Creamer front label mislead consumers into believing that the product's vanilla flavor comes exclusively or

1   predominantly from vanilla bean extract.  *See* ECF No. 19, ¶¶1-3, 13, 52.  No *reasonable*

2   consumer would draw such a conclusion from the product's "vanilla" statement and images.  The

3   consumer in a grocery store is looking, first and foremost, for coffee creamer – not vanilla.  The

4   vanilla statement "on the front of the [365 Coffee Creamer] allows the consumer to quickly

5   understand the flavor of the [creamer] and differentiate between products."  *Cosgrove v. Blue*

6   *Diamond Growers,* 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020).  Reasonable consumers

7   read the flavor indicator "vanilla" and conclude the product tastes like vanilla, as opposed to

8   hazelnut or some other flavor.

9          The label does not include any qualifying language, such as "made with vanilla extract" or

10  "100% vanilla extract" or anything else that might lead a reasonable consumer to conclude that the

11  product's vanilla flavor comes exclusively or predominantly from vanilla bean extract.  In fact, as

12  this Court correctly noted in its recent decision in *Nacarino v. Chobani, LLC*, No. 20-cv-07437-

13  EMC, 2021 WL 3487117 (N.D. Aug. 9, 2021), "[f]ederal courts have repeatedly rejected the

14  theory that reasonable consumers would interpret the word 'vanilla,' without qualifiers, on a

15  product label to indicate that a product's vanilla flavoring comes *exclusively* from the vanilla

16  plant." *Nacarino,* 2021 WL 3487117, at *5 (emphasis original) (citing *Clark v. Westbrae Natural,*

17  *Inc.* ("*Clark II*"), No. 20-cv-03221-JSC, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021); *Cosgrove*,

18  2020 WL 7211218; *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493-VEC, 2020 WL

19  6323775 (S.D.N.Y. Oct. 27, 2020)); *see also Fahey v. Whole Foods Market, Inc.* 2021 WL

20  2816919, at *2 (holding "that the word 'vanilla' without any qualifying terms does not lead a

21  reasonable consumer to believe that the vanilla flavor came exclusively or predominantly from

22  vanilla beans.").

23         Several district court decisions in New York used the same reasoning to dismiss largely

24  indistinguishable consumer deception claims brought under New York's General Business Laws

25  relating to vanilla ice cream, ice cream bars, and almond milk.  *See Steele v. Wegmans Food*

26  *Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (dismissing consumer deception claims

27  because the vanilla ice cream product was in fact vanilla flavored and the label did not reference

28

vanilla beans or vanilla extract); *Dashnau v. Unilever Manufacturing (US), Inc.,* No. 19-cv-10102-KMK, 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021) ("[T]he SDNY Vanilla Cases have concluded that the word 'vanilla,' when used to describe a product such as ice cream or almond milk, describes a flavor, not a particular ingredient."); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *3 ("Defendant's [Almondmilk] does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla' or anything similar.  The Product makes one representation – that it is vanilla flavored – and Plaintiffs do not allege that the Product did not deliver on that representation.  This alone is fatal to Plaintiffs' case.").

The same reasoning and analysis of these California and New York decisions applies to the present matter.  The 365 Coffee Creamer label promises the product will taste like vanilla; it does not promise a specific or exclusive vanilla ingredient.  Although the front label includes images of a vanilla flower and vanilla beans (ECF No. 19, ¶¶1, 13), these images do not convert the "vanilla" statement from a general flavor statement to a specific ingredient claim, promising that vanilla bean extract is the exclusive flavor source.  *See Nacarino*, 2021 WL 3487117, at *6 ("no reasonable consumer would take the Product's vanilla imagery…as indicating that the yogurt's flavor is derived exclusively from the vanilla plant."); *see also Budhani v. Monster Energy Co.*, No. 20-cv-1409-LJL, 2021 WL 1104988, at **6, 8 (S.D.N.Y. Mar. 22, 2021) (finding vanilla flower image in conjunction with statement "Vanilla Cream" does not lead reasonable consumer to conclude vanilla bean was the energy drink's exclusive or predominant vanilla flavor source).

The images and "vanilla" statement, at most, suggest that some of the creamer's flavor is derived from vanilla extract.  *Nacarino*, 2021 WL 3487117, at *6 ("While the imagery may suggest that at least some of the Product's flavor is derived from the vanilla bean or extract, it in no way implies that they are the exclusive flavor source.").  That is precisely what 365 Coffee Creamer provides.  Extractives from the vanilla plant are used in 365 Coffee Creamer as a flavoring, and are properly disclosed as "natural flavors" in the ingredient statement – whether it is used alone or combined with other natural flavors.[5]  Plaintiffs' FAC admits this fact, by conceding

_____

[5] FDA regulations confirm that "extractives" from the vanilla plant are "natural flavor[s]" or "natural flavoring" (21 C.F.R. 101.22(a)(3)), and expressly allow their listing on an ingredient list

1    that the creamer contains at least a "*de minimis*" amount of vanilla extract.  *See* ECF No. 19, ¶¶22,

2    53, 128, 156.

3        Nothing in the FAC distinguishes this case from *Clark II, Nacarino, Fahey, Steele,*

4    *Pichardo, Cosgrove, Dashnau* or *Budhani,* on this "vanilla" issue nor renders Plaintiffs' theory

5    more plausible.  While Plaintiffs rely on product testing as support for their allegations that 365

6    Coffee Creamer contains less vanilla than consumers expect, these cases considered and rejected

7    similar allegations and arguments.  Regardless, as detailed below, Plaintiffs' testing is materially

8    flawed and unreliable, leaving their allegations of supposed artificial flavoring without substance

9    or factual support.  Thus, the bare allegations of the FAC do not plausibly support an inference

10   that reasonable consumers interpret "vanilla" on the 365 Coffee Creamer label to mean that its

11   flavor is derived exclusively from vanilla beans.  Rather, consumers of 365 Coffee Creamer got

12   what they paid for – vanilla flavored creamer.  As the *Steele* court rhetorically questioned: "What

13   is misrepresented?"  *Steele,* 2020 WL 3975461, at *2.  The answer here is the same as in *Steele*:

14   nothing.

15       **2.    Plaintiffs Have Not Plausibly Alleged That 365 Coffee Creamer's Label Does**

16       **Not Comply with Federal Regulations or That It Contains Artificial Flavors.**

17       "By defining unfair competition to include any '*unlawful* ... business act or practice' (§

18   17200, italics added), the UCL permits violations of other laws to be treated as unfair competition

19   that are independently actionable." *Kasky v. Nike, Inc.* 27 Cal. 4th 939, 949 (2002), as

20   modified (May 22, 2002).  Plaintiff Warren claims that WFM California's conduct is unlawful

21   under the UCL because 365 Coffee Creamer's label allegedly violates FDCA labeling regulations

22

23

24

─────────────────

25   as "natural flavors."  21 C.F.R. 101.22(h) ("The label of a food to which flavor is added shall
     declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor,

26   and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor' or any
     combination thereof as the case may be.").  As discussed in greater detail in Section V(C)(2)

27   below, Plaintiffs have no factual basis to allege that the natural flavors in 365 Coffee Creamer
     include artificial instead of natural flavors.

28

as adopted under California's Sherman Law, and because 365 Coffee Creamer's label is false and misleading under the FAL and CLRA.[6]  *See* ECF No. 19, ¶¶106-109.

The FDCA governs the labeling of 365 Coffee Creamer and expressly preempts any state law provisions that are not identical to federal law.[7]  21 U.S.C. § 343-1(a)(3).  The FDA has issued regulations, *i.e.*, 21 C.F.R. section 101.22, that address the use and labeling of flavoring agents in food products and, as relevant to the present case, permit manufacturers to identify a product's characterizing flavors on its label.[8]  These regulations confirm that "extractives" from the vanilla plant are "natural flavor[s]" or "natural flavoring" (21 C.F.R. 101.22(a)(3)), and expressly allow their listing on an ingredient list as "natural flavors."  *See* 21 C.F.R. 101.22(h).

Plaintiffs contend the 365 Coffee Creamer label violates these federal regulations because the product allegedly contains artificial vanillin without including the qualifying language "Artificially Flavored" on the product's front label.  *See* ECF No. 19, ¶33, 34, 135, 156, 158. Plaintiffs further contend that the alleged presence of this artificial flavoring ingredient renders the label statements "Naturally Flavored" and "Natural Flavors" false and misleading, and a separate violation of state and federal regulations.  *Id.*, ¶¶19, 29, 32, 34, 71-79.

---

[6] Plaintiff Reed makes the same allegations under Nevada law, claiming WFM California violated the NDTPA by selling 365 Coffee Creamer with a label that violates state and federal labeling regulations.  *See* ECF No. 19, ¶¶154-158.  Thus, the arguments set forth in Section V(C) apply with equal force to the substance of plaintiff Reed's NDTPA and unjust enrichment claims.

[7] Because Plaintiffs FAC fails to allege facts establishing that the 365 Coffee Creamer label violates any FDA labeling regulations, their state law claims (i.e., alleging the label must include the phrase "artificially flavored") are preempted.  *See Salazar v. Honest Tea Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) ("because plaintiff's allegations do not show a violation of the FDCA, plaintiff's state laws claims [were] preempted; if allowed to proceed, the state law claims would impose liability inconsistent with the FDCA."); *see also Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d at 1120 (finding preemption because otherwise plaintiff "would necessarily impose a state-law obligation for trans fat disclosure that is not required by federal law"); *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("To the extent that Plaintiff seeks to regulate the term 'source' in the same manner as 'good source,' going beyond the boundaries of the regulation, this claim is preempted).

[8] The FDCA defines "food" to include drink products intended for human consumption.  *See* 21 U.S.C. § 321(f).

1    FDA regulations define natural and artificial flavorings differently and only require the use

2  of the phrase "artificially flavored," or other similar qualifying language, on a product's label in

3  specific and limited circumstances – namely those involving artificial flavors.  *See* 21 C.F.R. §§

4  101.22(a)(1), (a)(3), (i)(1) & (i)(2).  The FAC, however, does not allege any basis in fact for

5  inferring that 365 Coffee Creamer contains artificial flavors.  Accordingly, Plaintiffs have not

6  alleged a plausible basis for finding that the 365 Coffee Creamer label violates the FDCA nor that

7  consumers may be deceived by the "natural" flavor statements.

8    FDCA regulations define "flavoring" as any ingredient "whose significant function in food

9  is flavoring rather than nutritional," 21 C.F.R. § 101.22(a)(3).  The regulations further distinguish

10  between natural flavors and artificial flavors.  The term "natural flavors" refers to "the essential

11  oil, oleoresin, essence or extractive … which contain the flavoring constituents derived from a

12  spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or

13  similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof,

14  whose significant function in food is flavoring rather than nutritional."  21 C.F.R. § 101.22(a)(3).

15  The term "artificial flavors," on the other hand, refers to "any substance, the function of which is

16  to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice,

17  edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy

18  products, or fermentation products thereof."  21 C.F.R. § 101.22(a)(1).  The regulations also

19  require that natural and artificial flavors be declared as such in the product's statement of

20  ingredients.  *See* 21 C.F.R. § 101.22(h)(1).

21    As discussed above, Plaintiffs claim that the vanilla flavor in 365 Coffee Creamer comes,

22  at least in part, from artificial flavors.  ECF No. 19, ¶¶18, 22, 128, 156.  The FAC, however, does

23  not include sufficient factual allegations to establish, or even infer, the use of any artificial flavors

24  in 365 Coffee Creamer.  Nothing on the product's packaging or label gives Plaintiffs any valid

25  basis for such a claim.  Quite the opposite.  The product's ingredient statement, as required by the

26  regulations, affirms it only uses *natural* flavoring agents – "natural flavors" – as does its front

27  label – "naturally flavored."  *Id.*, ¶¶1, 14.  Thus, the product labeling confirms its use of oils,

28

1   essences and extractives that come from natural sources as defined in 21 C.F.R. section

2   101.22(a)(3), including extractives from the vanilla plant.

3       As has been typical of the slew of vanilla lawsuits filed by Plaintiffs' counsel, the FAC

4   relies on unsubstantiated "analytical testing" conducted by an unidentified researcher to provide

5   the supposed "factual" basis for claiming 365 Coffee Creamer contains artificial flavoring

6   ingredients.  ECF No. 19, ¶¶18-26.  Numerous courts rejected these same analyses because the

7   purported scientific testing (1) cannot remedy any otherwise implausible claim of deception, and

8   (2) does not indicate anything about the source of any compound found to be present in the

9   products (such as vanillin, which can be naturally derived from the vanilla bean).

10      In *Cosgrove*, the plaintiff alleged that a scientific test revealed that the vanilla almond milk

11  product at issue "contain[ed] non-vanilla flavors which provide its vanilla taste and contain[ed]

12  artificial flavors." *Cosgrove,* 2020 WL 7211218, at **1, 5.  The complaint included allegations

13  about similar analytic testing results, which allegedly showed the presence of vanillin and other

14  flavoring compounds.  The court, however, did not give any weight to the test results, because

15  plaintiff's theory that a reasonable consumer would believe that the product contains vanilla

16  flavoring exclusively from the vanilla bean was implausible.  *Id*. at **3-5.

17      Other courts, including some in this district, agree; scientific testing cannot remedy an

18  otherwise implausible claim of deception. *See, e.g., Clark*, 2020 WL 7043879, at *1 (vanilla

19  claims implausible even though plaintiff cited and provided alleged results of vague "scientific

20  testing"); *Barreto v. Westbrae Natural, Inc.*, No. 19-cv-9677-PKC, 2021 WL 76331, at *3

21  (S.D.N.Y. Jan. 7, 2021) (alleged GC-MS results insufficient to support otherwise implausible

22  allegations that vanilla product labeling was misleading); *Steele*, 472 F. Supp. 3d at 50 (same);

23  *Twohig v. Shop-Rite Supermarkets, Inc.,* No. 20-cv-0763-CS, 2021 WL 518021, at *3 (S.D.N.Y.

24  Feb. 11, 2021). (same).  Thus, Plaintiffs' alleged test results cannot remedy the implausible

25  "exclusivity" claim nor refute the fact that the 365 Coffee Creamer, in fact, contains vanilla bean

26  extractives.

27

28

Even assuming Plaintiffs' testing could remedy an implausible deception theory (and it cannot), Plaintiffs' analytical testing is unreliable and flawed, and therefore does not provide the necessary factual basis for alleging that 365 Coffee Creamer contains artificial flavors.  As a preliminary matter, no one with any scientific expertise supports Plaintiffs' testing or claims on this point and Plaintiffs do not attach the analytic testing to the FAC.  As such, there is no way for the Court to review the testing's complete objectives, methodology, results, controls and conclusions.  The Court is instead asked to rely only on Plaintiffs' attorney's impermissible, inadmissible lay interpretation of selectively presented results from the analysis.  Plaintiffs' counsel is not qualified to offer these conclusions, nor address the numerous questions left open by the study.

For instance, it is unclear why the study did not specifically test for vanillin if its presence was a key indicator used in Plaintiffs' argument.  This is the same flaw noted by the court in *Steele,* where the court dismissed a similar analysis on methodological grounds: "What is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers."  *Steele*, 472 F. Supp. 2d at 51.  The court accordingly dismissed plaintiff's contention that the lack of vanilla extract's chemical markers indicated that Wegmans' ice cream did not contain vanilla extract, holding that "the test was not sensitive enough to detect the markers with smaller profiles in the bean."  *Id.*  The same problem attends here because Plaintiffs' summary of the test does not indicate whether the specific chemical markers were tested, and the Court is unable to review the actual analysis itself.

It is likewise unclear how this testing is able to discern between 365 Coffee Creamer "flavors" and other ingredients, and whether such flavors are able to survive the barrage of transformations, including possibly vaporization, ionization, mixing with other chemicals, extraction, clarification and/or drying that may have been part of the testing.  Such transformations could cause reactions that modify or eliminate some chemicals in the product.  Plaintiffs' methodology is further flawed as Plaintiffs' summary of the testing does not indicate that a control experiment was conducted on a sample with known and agreed flavor composition.  ECF No. 19,

1   ¶¶18-26.  Without such a control, Plaintiffs have no basis to allege that their test could or should

2   have detected the small amounts of chemicals associated with vanillin which they claim are truant.

3         In *Clark II*, the same plaintiff's counsel argued, like here, that testing showed the presence

4   of artificial vanillin and another supposedly artificial ingredient (maltol), which allegedly provided

5   vanilla flavor and rendered the product mislabeled.  *Clark II*, 2021 WL 1580827, at **4-5.  The

6   Court rejected the claim, noting Plaintiffs' counsel's concession that "vanillin is or can be derived

7   from the vanilla bean and that [p]laintiff ha[d] no good faith basis for alleging that the vanillin in

8   the [p]roduct is not from vanilla bean" or that vanillin or maltol were artificial flavors.  *Id*.  The

9   same is true here—the presence of vanillin in the analytic testing results does not suggest that the

10   vanillin is from an artificial non-vanilla source, or that the 365 Coffee Creamer's vanilla flavor

11   comes from the vanillin and not the vanilla extract.

12         Any inferences drawn from Plaintiffs' unattached testing are unreliable and should be

13   disregarded.  Thus, she has not alleged a factual basis for asserting that the 365 Coffee Creamer

14   label violates FDA regulation nor that its "natural" flavor statements are false or misleading.

15   **D.**      **Because She Has an Adequate Remedy at Law, Plaintiff Warren Cannot Pursue Her**

16            **Equitable Claim for Restitution under the UCL and FAL.**

17         If this Court does not dismiss Plaintiffs' lawsuit outright, it should nonetheless dismiss

18   plaintiff Warren's claims for restitution under the UCL and FAL.  Both claims sound in equity.

19   *See Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 9 Cal. 5th 279, 292

20   (2020).  Further, plaintiff Warren requests an award of restitution.  *See* ECF No. 19, ¶¶115, 124,

21   130.  The Ninth Circuit recently made clear in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834,

22   844 (9th Cir. 2020), that federal common law – not state law – governs claims of equitable relief

23   in federal court and consumers cannot seek equitable relief under UCL without first establishing

24   that he or she lacks an adequate remedy at law.[9]  Plaintiff Warren makes no effort at alleging that

25

---

26   [9]  Although *Sonner* did not involve a FAL claim, the Ninth Circuit's reasoning as to the UCL
     should apply to FAL claims since both statutes only provide equitable relief.  "The remedies
27   available in a UCL or FAL action are limited to injunctive relief and restitution."  *In re Vioxx
     Class Cases,* 180 Cal. App. 4th 116, 130 (2009).

28

        Case No. 3:21-cv-04577-EMC

MPA ISO DEF.'S MTN. TO DISMISS FAC

1    she lacks an adequate remedy at law in the FAC because she has one.  Plaintiff Warren demands

2    money damages as part of her CLRA claims.  *See* ECF No. 19, ¶148.

3        In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later

4    abandoned her damages claim under the CLRA in favor of her claims for equitable restitution

5    under the UCL.  *Sonner,* 971 F.3d at 834.  The district court subsequently dismissed the plaintiff's

6    remaining claims for restitution, holding that she "failed to establish that she lacked an adequate

7    legal remedy for the same past harm for which she sought equitable restitution."  *Id*. at 838.  The

8    Ninth Circuit affirmed, agreeing that "the traditional principles governing equitable remedies in

9    federal courts, including the requisite inadequacy of legal remedies, apply when a party requests

10   restitution under the UCL and CLRA in a diversity action."  *Id*. at 844.  And because the plaintiff

11   had not alleged – let alone demonstrated – that she lacked an adequate legal remedy, the court held

12   that she could not seek restitution.  *Id*.

13       This Court dismissed the plaintiff's equitable claims for restitution and disgorgement under

14   the UCL in *Nacarino* because the plaintiff failed to establish that she lacked an adequate remedy at

15   law based on similar vanilla allegations.  *Nacarino*, 2021 WL 3487117, *13.  Several district

16   courts in this circuit, following *Sonner*, have also granted motions to dismiss claims for equitable

17   relief under the UCL and FAL.  For example, in *Zaback v. Kellogg Sales Co.*, No. 20-cv-00268-

18   BEN, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) – another "vanilla" case – the court

19   concluded that *Sonner* "require[d]" dismissal of the entire case because all the claims sounded in

20   equity and the plaintiff failed to allege that he lacks an adequate remedy at law.  The *Zaback* court

21   also rejected the argument that the *Sonner* decisions should be limited to its unique procedural

22   circumstances, citing a number of district court decisions that have applied *Sonner* to dismiss

23   similar claim at early stages of the litigation.  *Zaback*, 2020 WL 6381987, at *4, citing *In re*

24   *MacBook Keyboard Litig.*, No. 18-cv-2813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13,

25   2020); *Krommenhock v. Post Foods, LLC*, No. 16-cv-4958-WHO, 2020 WL 6074107, at *1 (N.D.

26   Cal. Sep. 29, 2020); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-769-CJC, 2020 WL

27   5492990, at *3 (C.D. Cal. Sep. 9, 2020).

28

*Sonner* precludes plaintiff Warren's demand for restitution in this case.  As the Ninth Circuit made clear, a plaintiff seeking restitution must "plead 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law."  *Sonner*, 971 F.3d at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (emphasis added).  Plaintiff Warren, however, has not alleged that she lacks an adequate remedy at law in the FAC, nor could she since the CLRA authorizes "actual damages" in addition to equitable restitution.  *See* Cal. Civ. Code § 1780(a)(1).  Absent any plausible allegation that the CLRA's damages remedy is inadequate to compensate plaintiff Warren for her alleged harm, *Sonner* bars her from seeking restitution — or any other equitable remedy.

## VI.    CONCLUSION

For the reasons stated herein, WFM California asks that this Court grant its motion and dismiss Plaintiffs' FAC with prejudice.

Dated:  November 12, 2021                               BLAXTER | BLACKMAN LLP


                                                By  _____
                                                         /s/*Brian R. Blackman*
                                                     BRIAN R. BLACKMAN
                                                     J.T. WELLS BLAXTER
                                                     DAVID P. ADAMS
                                                     Attorneys for Defendant
                                                WHOLE FOODS MARKET CALIFONRIA, INC.