UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAARON WARREN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET CALIFORNIA, INC.,<br><br>Defendant. | Case No. 21-cv-04577-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 27 |

## I.   INTRODUCTION

On October 12, 2021, Plaintiffs Kaaron Warren and Christina Reed filed a putative class action amended complaint against Defendant Whole Foods Market California, Inc. ("Defendant" or "WFM CA"), asserting state law false advertising claims on behalf of California residents (the proposed "California Class") and Nevada residents (the proposed "Nevada Class") that purchased Defendant's 365 Everyday Value coffee creamer (the "Product"). First Amended Complaint ("FAC"); Docket No. 19. In the FAC, Plaintiffs allege that Defendant misleadingly and deceptively states, in violation of Food and Drug Administration ("FDA") regulations, "Vanilla" and "Naturally Flavored" on the front label of the Product since the Product contains artificial vanilla flavoring substances (ethyl vanillin and artificial vanillin converted from Guaiacol, which is "obtained from synthetic benzene and propylene"). *See* FAC ¶¶ 18-26. On November 12, 2021, Defendant moved to dismiss the FAC on both jurisdictional and failure-to-state-a-claim grounds. *See* Motion to Dismiss ("MTD"); Docket No. 27. For the following reasons the Court **DENIES** Defendant's motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In the operative complaint, Plaintiffs specifically allege that Defendant "manufactures, distributes, markets, labels, and sells a dairy coffee creamer under its 365 Everyday Value brand, purporting to be 'Naturally Flavored' by 'Vanilla'" on the front label and noting that the Product contains "Natural Flavor" in the ingredient list on the back label. *See* FAC ¶¶ 1, 2, 14. Plaintiffs contend that Defendant's labeling of the Product misleads consumers into believing that "the predominant or exclusive source of the Product's vanilla taste will be the natural flavor of vanilla, and the product will not contain artificial flavoring." FAC ¶ 13. Further, Plaintiffs allege, based on scientific testing they conducted, that the Product contains a type of artificial flavoring substance named ethyl vanillin that is not derived from the vanilla plant and made through a non-natural process. *See* FAC ¶¶ 18-20. Additionally, Plaintiffs allege that the testing suggests Defendant uses chemically synthesized vanillin "that is mostly not from the vanilla plant." *See* FAC ¶ 22. Plaintiffs specifically note that the testing detected "guaiacol at atypically elevated levels (0.234 PPM)" and emphasize that "guaiacol is an artificial source that is made through non-natural processes." *See* FAC ¶¶ 12, 22-26. As such, Plaintiffs claim that by omitting "Artificially Flavored" from the Product's front label as required under FDA regulations and by displaying instead "Naturally Flavored," Defendant gives consumers a false expectation that most or all the Product's flavoring comes from the natural flavor of vanilla and not any artificial or synthetic flavoring. *See* FAC ¶¶ 34, 41-43. Plaintiffs state that they "understood 'Naturally Flavored' to mean the Product was flavored exclusively or predominantly from the natural flavor of vanilla, images of which were presented on the label" and "did not expect artificial flavoring because the Product was labeled 'Naturally Flavored.'" FAC ¶¶ 65-66.

Plaintiffs specifically allege that because "Defendant knew or should have known that its representations and omissions were likely to deceive consumers" and Plaintiffs "would only have been willing to pay less, or unwilling to purchase [the Product] at all, absent the misleading representations," Defendant's labeling practice is both unlawful and fraudulent. *See* FAC ¶¶ 56, 109, 120, 122. Plaintiffs thus bring claims under (1) the unlawful prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (California Class); (2) the

2

1   unfair and fraudulent prongs of the UCL (California Class); (3) California's False Advertising
2   Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (California Class); (4) California's
3   Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (California Class); (5)
4   the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598 *et seq.* (Nevada
5   Class); and (6) state law unjust enrichment claims (California and Nevada Classes). *See* FAC ¶¶
6   104-160. Plaintiffs additionally seek declaratory and injunctive relief, punitive damages, and
7   attorneys' fees and other costs. *See* FAC, Prayer for Relief ¶ A-I.

8         Defendant moved to dismiss the FAC for failing to (1) establish the Nevada Class's Article
9   III standing to sue a California corporation, (2) establish the Court's subject matter jurisdiction
10  over the California Class's claims, (3) state a claim under 12(b)(6), and (4) allege inadequacy of
11  legal remedies that warrants equitable claims. *See* MTD at 2-3. In response, Plaintiffs requested
12  limited jurisdictional discovery and leave to amend the FAC to name the proper defendant(s) and
13  to cure other deficiencies in their pleadings. *See* Plaintiff's Opposition ("Opp'n") at 16-17;
14  Docket No. 42.

15        The Court heard oral argument on the motion to dismiss on February 3, 2021. Notably, the
16  parties disputed whether Plaintiff Reed and the Nevada class had a claim against Defendant. The
17  parties specifically disputed whether Defendant WFM California manufactures, distributes, or
18  labels the Product. The Court noted that this issue is not a question of Plaintiff Reed's standing
19  since she alleges in the operative complaint that she purchased the product in reliance on the label
20  and suffered an injury. *See* Minute Order at 1; Docket No. 46. Rather, the issue was whether she
21  had named the proper defendant. Minute Order at 1. The Court emphasized that this was not an
22  Article III standing question, but a Rule 12(b)(6) issue concerning whether Plaintiff Reed had
23  stated a cause of action against the named defendant (WFM California). Minute Order at 1. As
24  such, pursuant to Federal Rules of Civil Procedure Rule 12(d), the Court converted the motion to
25  dismiss to a motion for partial summary adjudication and gave the parties "reasonable opportunity
26  to present all the material that is pertinent to the motion." Minute Order at 1, quoting Fed. R. Civ.
27  P. 12(d). Additionally, the Court granted the parties a limited right of discovery on the issue of
28  which Whole Foods Market entity may be liable for the alleged mislabeling. Minute Order at 2.

1    The Court noted that because that determination may give rise to questions about personal

2    jurisdiction, discovery may encompass jurisdictional discovery as well and ordered the parties to

3    cooperate and facilitate expedited focused discovery.  Minute Order at 2.  Further, the Court gave

4    the parties ninety (90) days from the date of the hearing to conduct such discovery and submit a

5    joint status report before the continued hearing on this matter.  Minute Order at 2.

6         On April 15, 2022, the parties submitted a joint stipulation regarding substitution of

7    parties.  Joint Stipulation; Docket No. 49.  Pursuant to Federal Rule of Civil Procedure Rule 15,

8    the parties specifically agreed and stipulated to the substitution of WFM Private Label LP for

9    Defendant WFM California in the FAC.  Joint Stipulation at 2.

10        On May 3, 2022, the parties submitted a joint status report.  Status Report at 2; Docket No.

11   50.  The parties stated that if the stipulated substitution is granted, they have agreed that Plaintiff

12   Reed would dismiss her claims, as well as the claims of the Nevada class, without prejudice.

13   Status Report at 2.  The parties also stated that if the stipulation is granted and Plaintiff Reed and

14   the other members of the proposed Nevada class are dismissed, that the portion of Defendant's

15   motion to dismiss regarding personal jurisdiction is withdrawn as moot, with only the non-

16   jurisdictional arguments remaining for decision by the Court.

17        The Court granted the joint stipulation on May 4, 2022 and heard further argument on the

18   remaining non-jurisdictional claims on May 10, 2022.  Order on Stipulation; Docket No. 51.  As

19   such, the Court finds at the outset that Defendant's argument for dismissal based on lack of

20   personal jurisdiction **MOOT** since this issue is no longer disputed by the parties given the

21   substitution of a California defendant for a Texas based defendant.  Further, given the

22   aforementioned agreement amongst the parties, the Court **DISMISSES** Plaintiff Reed's claims, as

23   well as the claims of the Nevada class, **WITHOUT PREJUDICE**.  Plaintiff Warren and the

24   California class remain and only the non-jurisdictional arguments remain for the Court to decide.

25   The Court addresses the remaining non-jurisdictional bases for dismissal below.

26        **III.**    **LEGAL STANDARD**

27   A.    Failure to State a Claim (Rule 12(b)(6))

28        Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

    Claims sounding in fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened standard of Rule 9(b), a plaintiff must identify the "'who, what, when, where, and how'' of the alleged misconduct and explain how the statement or omission complained of was false or misleading. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of Rule 9(b) is to require that a plaintiff's allegations be "specific enough to give defendants notice of the particular misconduct which is alleged . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rule 9(b) allows, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

1    Where a court dismisses a complaint, it "should grant leave to amend . . . unless it
2    determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*
3    *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should
4    consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive,
5    repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing
6    party[,] and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885
7    F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.     DISCUSSION

### A.     Failure to State a Claim under Rule 12(b)(6)

Defendant argues that Plaintiffs fail to establish that: (1) the Product's label violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), upon which the UCL's unlawful prong and the NDTPA are predicated, and (2) the Product's label is a deceptive or fraudulent misrepresentation that makes Defendant liable under the UCL's unfair and fraudulent prongs, under the FAL as "a false or misleading advertising claim," and under the CLRA. *See* MTD at 13.

#### 1.     Unlawful as Violating the FDCA

"[To] state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014). Here, Plaintiffs premise the unlawful prong claim on the contention that the mislabeled Product violates the FAL, CLRA, FDCA, and the California Sherman Food, Drug, and Cosmetic Law which incorporates all FDCA regulations, each serving as a predicate violation for a claim under the UCL unlawful prong. *See* FAC ¶¶ 106-109; *see, e.g., MacDonald*, 37 F. Supp. 3d 1087 at 1097 ("It is well established that a CLRA violation suffices as the predicate.").

As noted above, Plaintiffs specifically allege that the Product's label violates federal labeling regulations because it purports to be "naturally flavored" but in fact contains an artificial flavoring substance—ethyl vanillin, yet omits the words "Artificially Flavored" from its label. *See* FAC ¶¶ 32-34; Opp'n at 10. The applicable FDCA section at issue states "[i]f the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor," then the food must be labeled as "artificial" or "artificially flavored." 21 C.F.R. § 101.22(i)(2). Section

101.22, entitled "Foods; labeling of spices, flavorings, colorings and chemical preservatives," provides that:

> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
>
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."
>
> (ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."
>
> (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.
>
> (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored."

21 C.F.R. § 101.22. Plaintiffs claim that "[d]efendant violates federal and state law by not disclosing 'Artificially Flavored' on the front label, as required by 21 C.F.R. § 101.22(i)(2)." FAC ¶ 135.

Defendant emphasizes that "Plaintiffs only test[ed the] 365 Coffee Creamer [(the Product)]

7

1  and d[id] not compare th[eir] results to a control product with known and agreed flavor
2  composition," and as such, the results of Plaintiffs' mass-spectrometry testing are insufficient to
3  establish that ethyl vanillin exists in the Product. *See* Reply at 9. Defendant cites *Robie v. Trader*
4  *Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *5 n.1 (N.D. Cal. June 14, 2021), where
5  the district court found the plaintiff's claim that the disputed product contains ethyl vanillin
6  unsupported by factual allegations because the plaintiff only alleged that a chromatography-mass
7  spectrometry analysis detected ethyl vanillin at a concentration of 6.53 parts per billion. Notably,
8  the *Robie* court faulted the plaintiffs since there was "no indication that there was a control
9  condition during the testing and there was no presentation to the Court by someone qualified to
10 interpret whether the purported finding of such an infinitesimal amount is material or significant."
11 *Id.*

12     *Robie* is distinguishable. First, the plaintiffs in *Robie*, unlike Plaintiffs here, "fail[ed] to
13 allege that the vanillin in the Product c[ame] from artificial rather than natural sources" and only
14 conclusorily alleged that the flavoring was artificial. *Robie*, 2021 WL 2548960, at *5. As noted
15 above, Plaintiffs here allege, based on scientific testing of the Product, that the Product contains a
16 type of artificial flavoring substance named ethyl vanillin that is not derived from the vanilla plant
17 and made through a non-natural process and stated that the testing suggests Defendant uses
18 chemically synthesized vanillin (guaiacol that was converted to vanillin) "that is mostly not from
19 the vanilla plant." *See* FAC ¶¶ 18-26. Moreover, Plaintiffs here specifically claim that "the
20 amount of vanilla from the vanilla plant is negligible" and "the vanilla flavoring mainly comes
21 from artificial flavoring such as ethyl vanillin." FAC ¶ 18. Further, Plaintiffs offer more than a
22 bare conclusory allegation that the Product contains ethyl vanillin; they support their allegation
23 that the Product contains high levels of artificial flavoring with a photocopy of a test result—
24 similar to the one "filed as an exhibit to the complaint in *Nacarino*—showing ethyl vanillin at a
25 concentration of 2.205 parts per million. *See* FAC ¶ 18. Notably, the amount of ethyl vanillin
26 alleged here is over three hundred times higher than the amount deemed too "infinitesimal" to be
27 material in *Robie*.
28     Defendant argues that "there is no way for the Court to review the testing's complete

1  objectives, methodology, results, controls and conclusions." MTD at 21. "Of course, in order to
2  ultimately prevail on these claims, Plaintiffs will have to prove that Defendant did not comply
3  with the FDCA provisions listed above. However, to state a claim, Plaintiffs only need to allege a
4  plausible violation of the FDCA." *Clay v. Cytosport, Inc.*, No. 15-CV-165 L DHB, 2015 WL
5  5007884, at *4 (S.D. Cal. Aug. 19, 2015). As such, without engaging in a full review of the
6  testing's complete technical details, this Court finds it plausible that artificial flavoring ethyl
7  vanillin exists in the Product at issue here. Furthermore, Plaintiffs emphasize that courts at the
8  pleading stage have been accepting independent testing results provided by plaintiffs as plausible
9  factual allegations. *See* Opp'n at 11-12 (citing, *e.g.*, *Augustine v. Talking Rain Beverage Co., Inc.*,
10 386 F. Supp. 3d 1317, 1326 (S.D. Cal. 2019) (accepting the plaintiff's testing result as factual
11 allegation showing the presence of an artificial ingredient).

12       The alleged inadequacies in methodology or interpretation of scientific testing do not
13 warrant dismissal under Rule 12(b)(6) so long as the court can still reasonably infer from the
14 testing result and other alleged facts, taken as true, that the defendant is liable for the misconduct
15 alleged. *See Iqbal*, 556 U.S. at 678. Plaintiffs' independent lab testing showing ethyl vanillin at a
16 concentration of 2.205 parts per million forms at least a plausible factual allegation that "raise[s] a
17 reasonable expectation that discovery will reveal evidence of illegal[ity]." *Twombly,* 550 U.S. at
18 556. Put another way, asserting that the lab testing found the Product contains ethyl vanillin is a
19 factual allegation that appears at least "plausible on their face" to the Court and would, if true,
20 entitle Plaintiffs to relief. *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL
21 4698942, at *6 (N.D. Cal. Sept. 8, 2016). In *Zapata*, the court found that issues such as whether
22 the independent test followed FDA testing protocols and what type of scientific method was used
23 were "inquiries that the parties should explore in discovery," and the plaintiff's failure in alleging
24 related facts did not warrant dismissal. *Id.* Similarly, Defendant's complaints about the
25 methodology of Plaintiffs' lab testing and their interpretation are issues to be explored in later
26 stages of this case.

27       Defendant contrasts this case with *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC,
28 2021 WL 3487117, at *9-10 (N.D. Cal. Aug. 9, 2021), where this Court found an adequate factual

9

1   basis for the plaintiff to state a plausible federal violation because the plaintiff, seemingly in

2   contrast to Plaintiffs here, tested both the disputed product and competitor products to show the

3   differences in aromatic compound levels and the disparity among vanillin levels.  Defendant

4   further contends that, even if the Court credits the testing result purporting to show the presence of

5   ethyl vanillin, Plaintiffs still fail to allege facts demonstrating that the ethyl vanillin detected is

6   synthetic or artificial.  *See* Reply at 9-12.  Specifically, Defendant argues that being listed under

7   the FDA's list of "synthetic flavoring substances and adjuvants" does not unequivocally preclude

8   ethyl vanillin from coming from natural sources.[1]  Defendant also cites cases which hold that the

9   plaintiffs failed to plausibly allege at the motion to dismiss stage that ingredients such as vanillin,

10  maltol, and malic acid found in lab testing came from unnatural rather than natural sources.  *See*

11  *id.* at 9-12.

12      Notably, Plaintiffs clearly allege that "ethyl vanillin does not come from the vanilla plant

13  at all" and state that "it is an artificial, synthetic ingredient."  FAC ¶¶ 20-21.  At the May 10, 2022

14  status conference, Defendant again disputed Plaintiffs' allegation that the ethyl vanillin detected in

15  the Product is artificial and argued that ethyl vanillin could be produced both artificially and

16  naturally.  As such, the issue of whether the alleged ethyl vanillin in the Product is natural or

17  unnatural is in dispute.  Notably, unlike vanillin, which it is undisputed that it can be derived both

18  naturally and artificially, Plaintiffs assert that when used as a flavoring agent ethyl vanillin is

19  artificially derived.  That assertion is not patently implausible.[2]  Thus, at this stage the Court

---

[1] Defendant contends that because the FDCA defines artificial flavor as "any substance, the function of which is to impart flavor . . . includ[ing] the substances listed in . . . § 182.60 of this chapter *except where these are derived from natural sources*," "an ingredient may be listed in Sections 172.515(b) or 182.60 but still not qualify as artificial if it is derived from a natural source."  Reply at 11-12 (citing 21 C.F.R. § 101.22).

[2] *See* C. Rose Kennedy, *The Flavor Rundown: Natural vs. Artificial Flavors,* SCIENCE IN THE NEWS (Sep. 21, 2015), https://sitn.hms.harvard.edu/flash/2015/the-flavor-rundown-natural-vs-artificial-flavors/ ("For example adding one extra carbon atom to vanillin affords ethyl vanillin, which is 2–4 times more flavorful than vanillin itself."); *Vanilla vs. Vanillin – Science of Vanilla Flavorings*, FOOD CRUMBLES (Dec. 20, 2021), https://foodcrumbles.com/vanilla-vs-vanillin-vanilla-bean-ice-cream-recipe/#ethylvanillin-vanillins-artificial-powerhouse-cousin ("There is yet another vanilla flavoring molecule, which is always artificial.  This molecule can't be found in nature and has only been made by humans.  It was also discovered in the search for cheaper alternatives to vanilla.  Again, it's just one molecule: ethyl vanillin."); Ethylvanillin and You, PHYTOCHEMIA (March 31, 2017),  https://phytochemia.com/en/2017/03/31/ethylvanillin-and-you/

accepts as a factual allegation that ethyl vanillin allegedly found in the Product does not necessarily come from natural sources/is artificially derived. The fact that Plaintiffs have not alleged they tested a competitive product as a control does not negate plausibility of their claim based on ethyl vanillin.

In addition to claiming that the Product contains artificial ethyl vanillin, Plaintiffs also allege that the Product contains artificial vanillin. As noted above, Plaintiffs argue that "[t]he vanillin in the Product is mostly not from the vanilla plant, based on (1) its relatively high level, (2) the absence of expected amounts of key aromatic compounds—methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, and 4-methoxybenzyl alcohol (p-anisyl alcohol), and (3) the detection of guaiacol at atypically elevated levels (0.234 PPM), not explained by relation to any other compounds." FAC ¶ 22. Plaintiffs acknowledge that vanillin can be derived from various sources (vanilla or non-vanilla, natural or artificial), but argue specifically that the vanillin allegedly detected in the Product is artificial and made through non-natural processes. *See* Opp'n at 10 n.1; FAC ¶ 22.

The Court finds that Plaintiffs have failed to plausibly allege at this juncture that the vanillin in the Product is artificial. The reason (2) above— "the absence of expected amounts of key aromatic compounds"—does not plausibly lead to the conclusion that the vanillin detected is artificial. *See Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 51 (S.D.N.Y. 2020) ("The fact that the analysis disclosed only the vanillin may simply show that the test was not sensitive enough to detect the markers with smaller profiles in the bean. The test may just confirm that the vanilla flavor derives solely from vanilla extract."). Reasons (1) and (3) also appear implausible in light of *Nacarino v. Chobani, LLC,* No. 20-CV-07437-EMC, 2021 WL 3487117, at *9 (N.D. Cal. Aug. 9, 2021), where the plaintiff tested the vanillin level in both the disputed product and its competitors and this Court found the resulting difference plausibly implied that part of the vanillin came from unnatural sources. *Cf. Fahey v. Whole Foods Market, Inc.*, 2021

---

("Ethylvanillin is simply vanillin with an extra carbon – a methoxy becomes and ethoxy []. Its preparation parallels that of synthetic vanillin, simply introducing that extra carbon at the beginning of the process, starting from guethol instead of guaiacol [] . . . . Ethylvanillin is an efficient and accessible artificial flavoring agent . . . .").

11

1   WL 2816919 (N.D. Cal. Jun. 30. 2021), at *6 (finding mere allegation that the product has "an excess of vanillin" insufficient to support an allegation that vanillin came from non-natural sources).

Nonetheless, because Plaintiffs allege that ethyl vanillin is artificial and sufficiently show the presence of ethyl vanillin in the Product at a non-infinitesimal amount, the Court concludes that Plaintiffs have pled a plausible claim under the UCL's unlawful prong. This is without prejudice to Plaintiffs additionally making a stronger showing at a later juncture after discovery that the levels of vanillin in fact demonstrates artificial flavoring.

2.   Deceptive or Fraudulent Misrepresentation

Defendant argues that Plaintiffs "failed to allege sufficient facts to demonstrate a plausible misrepresentation in the 365 Coffee Creamer label" that is necessary for bringing claims under the UCL's unfair and fraudulent prongs, under the FAL as "a false or misleading advertising claim," and under the CLRA. *See* MTD at 13. Specifically, Defendant claims that because the Product's "vanilla" statement and images, without qualifiers such as "made with vanilla extract," are mere flavor indicators that allow consumers to differentiate the 365 Coffee Creamer from products with hazelnut or some other flavor, no reasonable consumer would draw a conclusion that the Product's vanilla flavor comes exclusively or predominantly from vanilla bean extract. *See* MTD at 14.

"[Fraudulent label] claims under the California consumer protection statutes are governed by the 'reasonable consumer' test," under which a plaintiff must show that "members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008)).

Defendant relies on several cases where courts held that the word "vanilla" and accompanying images, without any qualifying terms, do not cause reasonable consumers to believe a product's vanilla flavoring comes exclusively from the vanilla plant. *See* MTD at 14 (citing, e.g., *Nacarino*, 2021 WL 3487117, at *5 ("[f]ederal courts have repeatedly rejected the theory that reasonable consumers would interpret the word 'vanilla,' without qualifiers, on a product label to indicate that a product's vanilla flavoring comes exclusively from the vanilla plant."); *Fahey*, 2021 WL 2816919 at *2 ("the word 'vanilla' without any qualifying terms does

12

1  not lead a reasonable consumer to believe that the vanilla flavor came exclusively or
2  predominantly from vanilla beans.")).

3  In *Nacarino* and *Fahey*, the defendants claimed that the mere word "vanilla" was a flavor indicator and could not mislead reasonable consumers into believing that their vanilla flavor came exclusively or predominantly from the vanilla plant. Here, in contrast, "Naturally Flavored" *does* appear to be a qualifier, and the allegation is that consumers would interpret the entire phrase "Vanilla Naturally Flavored" to mean that the flavoring is all-natural. Plaintiffs persuasively cite a line of cases where courts found it was at least plausible that a reasonable consumer could interpret "natural" as describing a product that does not include synthetic, non-natural ingredients. *See id.* at 12-13 (citing *Moore v. GlaxosSmithKline*, 2021 WL 3524047, at *8 (N.D. Cal. Aug. 6, 2021) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does not contain any non-natural ingredients.")).

As such, Defendant 's reliance on the cases like *Nacarino* and *Fahey* for the proposition that "Vanilla" indicates a flavor "type" rather than the "source" of flavor are not persuasive here, at least not as a matter of law. Thus, the Court finds that Plaintiffs plausibly claim that Defendant's "Vanilla Naturally Flavored" representation on the Product label is deceptive to a reasonable consumer since the Product contains artificial flavoring ethyl vanillin.

Further, Plaintiffs specifically allege in the FAC that they: (1) purchased the Product in reliance on Defendant's "Naturally Flavored" representation (2) with the expectation that the Product did not contain any artificial or synthetic flavoring, and (3) would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations. *See* FAC ¶¶ 56, 64-68. The Court concludes that Plaintiffs have a plausible claim of fraudulent or deceptive misrepresentation.

B.  Availability of Equitable Claims

Defendant argues that "[a]bsent any plausible allegation that the CLRA's damages remedy is inadequate to compensate plaintiff Warren for her alleged harm, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) bars her from seeking restitution—or any other equitable

remedy." MTD at 24. Plaintiffs contend that "damages under the CLRA are a legal remedy" and "a different remedy than restitution under the False Advertising and Unfair Competition Laws." Opp'n at 15 (citing *Keating v. Nordstrom, Inc.*, 2020 WL 1846988, at *5 (D. Alaska April 10, 2020) (quoting *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 59 (Cal. Ct. App. 2006))).

The Court first addresses Plaintiffs' injunctive relief claims before turning to the restitution claims under the UCL and FAL. Defendant only broadly argues that *Sonner* also bars "any other equitable remedy," but does not specifically dispute the availability of injunctive relief. MTD at 24.

To seek injunctive relief, a consumer needs to allege that she (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). The Court previously confronted a nearly identical issue in *Nacarino v. Chobani, LLC (Nacarino II)*, No. 20-CV-07437-EMC, 2022 WL 344966, at *10-12 (N.D. Cal. Feb. 4, 2022) (denying Chobani's motion to dismiss Nacarino's request for injunctive relief because she alleged that she would purchase the disputed product again in the future if it complied with federal and state regulations by reformulation or re-labeling). Plaintiffs here similarly alleged that they would "buy the Product again if assured it was flavored mainly by the natural flavor of vanilla instead of artificial flavoring like ethyl vanillin." FAC ¶ 71.

The Court also noted in *Nacarino* that "courts have rightly emphasized that 'retrospective damages are not an adequate remedy for th[e] prospective harm' that injunctions are designed to prevent," and "'[i]njunctive relief [was] not at issue' in *Sonner* because the defendant only moved to dismiss the plaintiff's claims for restitution." 2021 WL 3487117 at *12 (citing *Sonner*, 971 F.3d at 841; *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 671 (N.D. Cal. 2021); *Andino v. Apple, Inc.*, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021)). Here, similarly, because the injunctive relief that Plaintiffs request "is prospective" and their "remedy at law, damages, is retrospective," their claim for an injunction does not appear to be barred by *Sonner*. *See id.*

As to Plaintiff Warren's restitution (or disgorgement) claims under the UCL and FAL, the question is whether Plaintiffs lack adequate remedy at law under the CLRA. *See* MTD at 22-23. This Court has also addressed a similar issue in *Nacarino II*, where the Court declined to dismiss the plaintiff's claim for restitution at the pleading stage and found it premature to determine whether the plaintiff's legal remedies were inadequate. *Nacarino II*, 2022 WL 344966, at *7-10.

"[A] federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner*, 971 F.3d at 841. This includes the equitable principle that in order to obtain an equitable remedy, a plaintiff must lack an "adequate remedy at law." *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996); *see also Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020) ("[The adequate remedy at law] principle applies squarely to an award of restitution – an equitable remedy – under the UCL."). Judge Seeborg explained in *Sonner*, "[i]n the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom. Sonner*, 971 F.3d 834. Notably, the Federal Rules of Civil Procedure allow for pleading in the alternative. Specifically, Rule 8 states that a claim for relief must contain "a demand for relief sought, *which may include relief in the alternative or different types of relief*." Fed. R. Civ. P. 8(a)(3) (emphasis added).

In *Nacarino II*, this Court explained in detail the relevance of *Sonner* to a case like the one in hand: namely, "a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action." 2022 WL 344966 at *9. On the other hand, in *Nacarino II*, this Court, citing *Junhan Jeong v. Nexo Financial LLC, et. al.*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) and *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022), concluded that *Sonner* has limited applicability to the pleading stage and the general liberal policy courts have toward pleading in the alternative allowed the equitable restitution claim to proceed past the pleading stage even though the plaintiff was also seeking contract damages. 2022 WL 344966 at *9-10.

15

Consistent with in *Nacarino II*, the Court finds that Plaintiff Warren is not barred by *Sonner* at this juncture from pursuing alternative remedies at this early stage of the suit and her "entitlement to seek the equitable remedy of restitution may be revisited at a later stage." *Nacarino II,* 2022 WL 344966 at *10. As such, the Court **DENIES** Defendant's motion to dismiss Plaintiff Warren's restitution claims under the UCL and FAL for failing to plead inadequate legal damages.

## V. CONCLUSION

For the forgoing reasons, the Court finds the basis for dismissal due to lack of personal jurisdiction **MOOT** and **DISMISSES** Plaintiff Reed's claims, as well as the claims of the Nevada class, **WITHOUT PREJUDICE**. Additionally, the Court **DENIES** Defendant's motion to dismiss for failing to allege claims under the UCL's unlawful, unfair and fraudulent prongs, the FAL, and CLRA. Further, the Court **DENIES** Defendant's motion to dismiss the injunctive relief and restitution claims under the UCL and FAL.

This order disposes of Docket No. 27.

**IT IS SO ORDERED**.

Dated: July 8, 2022

_____
EDWARD M. CHEN
United States District Judge